1   Christopher Kim, Esq. (Bar No. 082080)
2   Lisa J. Yang, Esq. (Bar No. 208971)
    **LIM RUGER & KIM, LLP**
3   1055 West Seventh Street, Suite 2800
    Los Angeles, California 90017
4   Telephone: (213) 955-9500
5   email: christopher.kim@lrklawyers.com
            lisa.yang@lrklawyers.com
6

7   David Kessler, Esq.                    Allyn Z. Lite, Esq.
8   Gregory M. Castaldo, Esq.              Joseph J. DePalma, Esq.
    Andrew L. Zivitz, Esq.                 **LITE DEPALMA GREENBERG &**
9   **SCHIFFRIN BARROWAY TOPAZ**          **RIVAS, LLC**
    **& KESSLER, LLP**                     Two Gateway Center, 12th Floor
10                                         Newark, New Jersey 07102
    280 King of Prussia Road               Telephone: (973) 623-3000
11  Radnor, Pennsylvania 19087
    Telephone: (610) 667-7706
12  Counsel for Plaintiffs
13
14              **UNITED STATES DISTRICT COURT**
15              **CENTRAL DISTRICT OF CALIFORNIA**
16                  **WESTERN DIVISION**
17
    In re: TENET HEALTHCARE              )   No.  CV-02-8462-RSWL (Rzx)
18                                       )
    CORP. SECURITIES LITIGATION         )   **LEAD PLAINTIFF'S**
19                                       )   **MEMORANDUM OF LAW IN**
20  _____     )   **SUPPORT OF MOTION FOR**
                                         )   **FINAL APPROVAL OF**
21                                       )   **SETTLEMENT AND PLAN OF**
    This Document Relates to             )   **ALLOCATION**
22      **ALL ACTIONS.**                 )
23                                       )   Date: October 21, 2008
24                                       )   Time: 10:00 a.m.
                                         )   Judge: The Hon. Ronald Lew
25                                       )   Courtroom: 21
26  _____     )
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

I.    PRELIMINARY STATEMENT ..................................................................... 1

      A.    The Settlement ...................................................................... 1

      B.    The Notice Process and the Reaction of the KPMG Class ............... 3

II.   HISTORY AND BACKGROUND OF THE ACTION ............................ 4

      A.    Factual and Procedural History ........................................... 5

      B.    KPMG as a Defendant ........................................................ 6

      C.    Investigation and Discovery ............................................... 8

      D.    Settlement Negotiations ...................................................... 9

III.  THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS .......................................................................... 10

      A.    The Law Favors and Encourages Settlements ................................. 10

      B.    The Ninth Circuit's Standards Governing Class Action Settlements .................................................................................. 11

IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ................................................................................................ 12

      A.    The Amount Offered in Settlement .............................................. 12

      B.    The Reaction of the KPMG Class Members to the Proposed Settlement ............................................................................... 13

      C.    The Strength of Plaintiffs' Case Supports the Settlement .............. 15

            1.    The Risk of Establishing Liability ...................................... 16

i

LIM, RUGER & KIM, LLP

2.     The Risk of Establishing Loss Causation and Damages ......17

D.    The Risk, Expense, Complexity, and Likely Duration of the Litigation ...................................................................19

E.    The Extent of Discovery Completed and the Stage of the Proceedings ..................................................................21

F.    The Experience and Views of Counsel Supports the Settlement..........................................................................22

G.    The Risks of Maintaining the Class Action Through Trial Support the Settlement ...........................................23

H.    The Absence of Fraud or Collusion Supports the Settlement ........24

V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ........................................................................25

VI.    CONCLUSION .........................................................................27

LIM, RUGER & KIM, LLP

# <u>Table of Authorities</u>

**Page(s)**

<u>Cases</u>

*In re Aremisoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)........................................................................15

*In re Broadcom Corp. Sec. Litig.*,
   Case No. SACV 01-275 DT (MLGx),
   2005 U.S. Dist LEXIS (C.D. Cal. Sept. 12, 2005) ......................................26

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .......................................................................18

*Churchill Vill. L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2003) .......................................................................7

*In re Clarent Corp. Sec. Litig.*,
   No. C01-03361 CRB (JCS) (N.D. Cal. Apr. 18, 2005) ...............................20

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..........................................................10, 22, 25

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).....................................................................................18

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL Docket No. 901,
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ...........................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................10, 12

*In re Heritage Bond Litig.*,
   MDL Case Co. 02-ML-1475DT,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).....................20, 25

*Hughes v. Microsoft*,
   Nos. C98-1646C & C93-0178C,
   2001 U.S. Dist. LEXIS 5976, at *24 (W.D. Wash. Mar. 21, 2001) ..............13

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

*In re Immune Response Secs. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)......................................................17, 24

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .......................................................................3

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) .........................................................................20

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...........................................................................12

*In re Mfrs Life Ins. Co. Premium Litig.*,
   MDL 1109,
   1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998) ...........................14

*In re Michael Milken & Assoc. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) .........................................................................15

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 529 (C.D. Cal. 2004)................................................14, 19, 22

*Officers for Justice v. Civil Service Com.*,
   688 F.2d 615 (9th Cir. 1982) .......................................................10, 11, 12, 19

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)....................................10, 15, 24, 26

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373, 377 (9th Cir. 1995) .......................................................................11

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................10, 18

*Principe v. Ukropina (In re Pacific Enters. Sec. Litig.)*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................10

*Rodriguez v. West Publishing Corp.*,
   Case No. CV 05-3222 R (MCx),
   2007 U.S. Dist. LEXIS 74767 (C.D. Cal. Sept. 10, 2007) ...........................21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................11

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................10, 19

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .....................................................................10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    720 F. *Supp.* 1379 (D. Ariz. 1989), *aff'd sub nom.,*
    *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992)............................22

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ...................................................................................10

**Federal Statutes**

15 U.S.C. § 78u-4(f)(7)(B) ...............................................................................19

**Rules**

Rule 23(e) of the Federal Rules of Civil Procedure ..............................................1

**Other Authorities**

3B MOORE'S FEDERAL PRACTICE ¶ 23.1.24[2] (2d ed. 1992) .............................11

MANUAL FOR COMPLEX LITIGATION § 30.43 (3d ed. 2002) ................................10

Newberg & Conte, NEWBERG ON CLASS ACTIONS (3d ed. 1992) .................10, 21

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff, the State of New Jersey and its Division of Investment ("Lead Plaintiff"), by and through its counsel ("Lead Plaintiff's Counsel"), respectfully moves this Court for an order approving the proposed settlement of the above-captioned action (the "Action") and approving the proposed Plan of Allocation, both of which this Court preliminarily approved by its Order for Preliminary Approval and for Notice and Hearing dated June 13, 2008 (the "Preliminary Approval Order").

## I.   PRELIMINARY STATEMENT

### A.   The Settlement

Lead Plaintiff brought this Action against Tenet Healthcare Corp. ("Tenet" or the "Company"), certain of Tenet's officers and directors (the "Individual Defendants"), and Tenet's outside auditor – KPMG LLP ("KPMG"), for violations of the federal securities laws.  On May 26, 2006, the Court approved a settlement between Lead Plaintiff and Tenet and the Individual Defendants (the "Tenet Settlement"), whereby (1) Tenet agreed to pay the Class a total of two hundred and fifteen million dollars ($215,000,000); (2) two of the Individual Defendants agreed to pay the Class an aggregate payment of one million five hundred thousand dollars ($1,500,000); and (3) Tenet agreed to institute and/or maintain corporate governance changes that would make it more difficult to engage in the type of illegal behavior alleged to have been committed in violation of the federal securities laws.  After the Court approved the Tenet Settlement, Lead Plaintiff continued to pursue its claims against defendant KPMG.

After several years of extensive and hard fought litigation, Lead Plaintiff and defendant KPMG have agreed to the proposed settlement (the "KPMG Settlement"), pursuant to which KPMG has agreed to pay the sum of sixty five

million dollars ($65,000,000) in cash (the "Settlement Amount") into an interest-bearing escrow account on behalf of Lead Plaintiff and the KPMG Class.[1]  Thus, as a result of the efforts of Lead Plaintiff and its counsel, the Action has produced an aggregate monetary recovery for Tenet shareholders of approximately two hundred and eighty one million five hundred thousand dollars ($281,500,000), as well as therapeutic benefits designed to protect Tenet's shareholders going forward from corporate misconduct.

Lead Plaintiff and its counsel respectfully submit that the proposed KPMG Settlement is an excellent result for the KPMG Class and should be approved by the Court.  Indeed, the proposed $65 million KPMG Settlement is one of the largest ever obtained in a securities class action against a company's outside auditor.  Had Lead Plaintiff continued the Action through trial, numerous hurdles existed with respect to proving liability and damages that cast significant doubt upon any monetary recovery from KPMG for the KPMG Class.  For these reasons and the reasons set forth herein, Lead Plaintiff requests that the Court approve the Settlement and the Plan of Allocation as fair, reasonable and adequate.

---

[1]  KPMG's payment is in exchange for the dismissal of all claims brought against it in this Action.  *See* ¶3 of the Joint Declaration of Gregory M. Castaldo and Allyn Z. Lite in Support of Lead Plaintiff's Motion for Final Approval of Settlement, Plan of Allocation, Motion for an Award of Attorneys' Fees and Expenses and Reimbursement to the Lead Plaintiff (the "Joint Declaration" or "Joint Decl.") submitted herewith on behalf of Lead Plaintiff's Counsel, the law firms of Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") and Lite DePalma Greenberg & Rivas, LLC ("Lite DePalma").  The terms of the proposed KPMG Settlement are set forth in the Stipulation and Agreement of Settlement dated as of June 10, 2008 (the "Stipulation"), which was previously filed with the Court. All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation.

LIM, RUGER & KIM, LLP

**B.      The Notice Process and the Reaction of the KPMG Class**

Pursuant to the Court's Preliminary Approval Order, the Notice of Proposed Settlement of Tenet Securities Litigation with KPMG LLP, Motion for Attorneys' Fees and Reimbursement of Expenses and Settlement Fairness Hearing (the "Notice") was mailed to a total of 552,303 potential KPMG Class Members or their nominees commencing on or before July 2, 2008.  *See* GCG Decl. ¶11.[2]   In addition, a summary notice was published in *The Wall Street Journal* on July 11, 2008.  GCG Decl. ¶16.

The Notice contained a detailed description of the nature and procedural history of the Action, as well as the material terms of the KPMG Settlement, including without limitation: (i) Lead Plaintiff's estimate of the per share recovery; (ii) the Plan of Allocation pursuant to which the Settlement Amount plus interest, less any taxes, administration costs, award of attorneys' fees and expenses to Lead Plaintiff's Counsel and reimbursement to Lead Plaintiff (the "KPMG Net Settlement Fund") will be allocated among participating KPMG Class Members; (iii) a description of the claims that will be released in the KPMG Settlement; (iv) the right and mechanism for KPMG Class Members to exclude themselves from the KPMG Class; and (v) the right and mechanism for KMPG Class Members to object to the KPMG Settlement.  *See* Exhibit 1(A) to the Joint Declaration.  The Notice also advised KPMG Class Members that if they had already submitted a valid Proof of Claim and Release form ("Proof of Claim") in connection with the Tenet Settlement, they were not required to

---

[2]   *See* the Declaration of Jose C. Fraga, submitted herewith on behalf of The Garden City Group, Inc. ("GCG"), the Claims Administrator in this Action (the "GCG Decl.").   The GCG Declaration is attached as Exhibit 1 to the Joint Declaration, and a copy of the Notice is attached as Exhibit A to the GCG Declaration.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

1  submit an additional Proof of Claim and would automatically be eligible to

2  participate in the KPMG Settlement if it is approved.  Joint Decl. ¶6.

3       KPMG Class Members had until September 19, 2008 to either submit an

4  objection to any aspect of the KPMG Settlement or request exclusion from the

5  KPMG Class.  As of the filing of this Memorandum, which is after the September

6  19, 2008 deadline for submitting objections or requests for exclusion, only one

7  objection to any aspect of the Settlement or Plan of Allocation has been received,

8  and only eleven KPMG Class Members have requested to be excluded from the

9  KPMG Class.  GCG Decl. ¶17.  The single objection, addressed below, and *de*

10  *minimus* number of exclusions confirm Lead Plaintiff's decision to resolve the

11  Action in exchange for the payment of the Settlement Amount and strongly

12  support the inference that the KPMG Class agrees that the Settlement and Plan of

13  Allocation are fair, reasonable and adequate and should be approved by the

14  Court.

15  **II.  HISTORY AND BACKGROUND OF THE ACTION**

16       The Court is respectfully referred to the accompanying Joint Declaration

17  for a full discussion of, *inter alia*, the factual and procedural history of the

18  Action, the claims asserted, the investigation and discovery undertaken, and the

19  negotiations leading to the KPMG Settlement.  Joint Decl. ¶¶9-36.  For the

20  Court's convenience, a short discussion of these facts is provided below.[3]

21

22

23  [3]  For a more detailed discussion of the litigation pursued and resolved against the

24  Tenet Defendants, the Court is also respectfully referred to the Declaration of

25  Richard S. Schiffrin in Support of Lead Plaintiff's Motion for Approval of the

Partial Settlement, Plan of Allocation, the Motion for an Award of Attorneys'

26  Fees, Reimbursement of Expenses and Incentive Award to Lead Plaintiff

27  submitted in connection with the Tenet Settlement.  *See* Docket No. 289.

28

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

A. **Factual and Procedural History**

This Action arose from a series of materially false and misleading statements and omissions by the Tenet Defendants and KPMG, from January 11, 2000 to November 7, 2002, which misled investors concerning Tenet's business model and financial health.  Specifically, Lead Plaintiff alleged, among other things, that Tenet's financial results were materially overstated because Tenet had defrauded Medicare out of hundreds of millions of dollars in unearned "outlier" payments ("Outliers").  Under Medicare rules and regulations, Outliers were intended to reimburse health care providers only for "extraordinary" costly patient care.  Tenet, however, created and implemented a system whereby it raised its gross charges astronomically to make normal patient cases qualify for Outlier reimbursements, thus creating a windfall of unearned revenue.  Joint Decl. ¶¶9-10.  Notwithstanding Tenet's abuse of the Medicare system and its recognition of hundreds of millions of dollars in unearned revenue during the Class Period, KPMG assured investors that Tenet's financial results complied with GAAP and "fairly" represented Tenet's financial condition.

Tenet's alleged scheme began to unravel on October 28, 2002, when a market analyst from UBS Warburg cast doubt upon the propriety of Tenet's Outlier revenues.  Shortly thereafter, on November 6, 2002, Tenet disclosed that the federal government intended to audit Outliers to its hospitals.  One day later, Tenet admitted that its Outliers were the result of exorbitant charge increases, and announced the termination of certain of its executive officers.  Tenet declared that it no longer wanted to do business that way.  Joint Decl. ¶11.  In response to these disclosures, Tenet's stock price plummeted.

As a result of the foregoing, eighteen securities class action complaints were filed against Tenet and certain of the Company's officers and directors in

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

the United States District Court for the Central District of California.[4]  The Court consolidated these actions on January 7, 2003.  Thereafter, the Court appointed the State of New Jersey and its Division of Investment as lead plaintiff ("Lead Plaintiff") on February 10, 2003, and on March 25, 2003, approved Lead Plaintiff's selection of Schiffrin & Barroway, LLP (now known as Schiffrin Barroway Topaz & Kessler, LLP) and Lite DePalma Greenberg & Rivas, LLC as Lead Plaintiff's Counsel, and appointed Lim, Ruger & Kim, LLP ("LRK") as liaison counsel.

## B.   KPMG as a Defendant

On May 16, 2003, Lead Plaintiff and KPMG entered into a tolling agreement extending the statute of limitations for filing a complaint against KPMG until March 28, 2005.  Joint Decl. ¶13.  On March 28, 2005, Lead Plaintiff filed a motion for leave to file the Third Amended Class Action Complaint for Violations of the Federal Securities Laws (the "TCAC"), seeking to add KPMG as a defendant.  On April 1, 2005, KPMG sought leave to intervene and subsequently opposed Lead Plaintiff's motion to amend.  The Court granted Lead Plaintiff's motion over KPMG's objection, and the TCAC became the operative complaint.  Joint Decl. ¶14.

The TCAC asserted claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933, alleging that KPMG falsely certified that (i) Tenet's fiscal years 2000, 2001 and 2002 financial statements were fairly presented in accordance with generally accepted accounting principles ("GAAP"), and (ii) KPMG's audits of these financial

---

[4]  Several derivative actions were also filed in this Court, as well as in California state court, alleging that certain of Tenet's current and former officers and/or directors had violated, among other things, their fiduciary obligations to Tenet and its shareholders.  These derivative actions have since been settled.

statements were performed in accordance with generally accepted accounting standards ("GAAS").   Joint Decl. ¶15; *see also* TCAC at §VIII, ¶¶340-365. KPMG moved to dismiss the TCAC on September 9, 2005.  On December 5, 2005, the Court denied KPMG's motion to dismiss and sustained the TCAC. Joint Decl. ¶16.

Thereafter, KPMG answered the TCAC, and Lead Plaintiff and KPMG (the "Parties") commenced discovery.[5]  Upon the completion of discovery, the Parties engaged in extensive dispositive motion practice (*see* Joint Decl. ¶18), and following briefing by the Parties, the Court, by Order dated December 5, 2007 (i) denied Lead Plaintiff's motion for sanctions, KPMG's motion for summary judgment and KPMG's *Daubert* motions to exclude the testimony of Harris L. Devor, CPA, Lead Plaintiff's accounting and auditing expert, and David N. Fuller, CFA, ASA, Lead Plaintiff's damages expert, in their entirety; (ii) granted in part and denied in part KPMG's *Daubert* motion to exclude the testimony of Lead Plaintiff's healthcare expert, Paul L. Chiafullo; (iii) granted KPMG's motion to start the KPMG Class Period on August 15, 2000 (instead of the previously certified beginning date of January 11, 2000); (iv) denied KPMG's motion to end the KPMG Class Period on October 28, 2002 (instead of the previously certified end date of November 7, 2002); and (v) granted both of KPMG's motions *in limine*.  Joint Decl. ¶19.

Trial was to begin on May 13, 2008, and the Parties were actively preparing for trial when the Settlement was reached.  Joint Decl. ¶20.

---

[5]  On June 7, 2007, the Action was transferred from the Honorable Ronald S.W. Lew to the Honorable Dale S. Fischer.  The Action was transferred back to Judge Lew on October 1, 2007.  Joint Decl. ¶17, fn. 7.

LIM, RUGER & KIM, LLP

### C.      **Investigation and Discovery**

Lead Plaintiff's Counsel conducted both a thorough investigation into the claims of the KPMG Class as well as extensive merits and expert discovery prior to reaching the Settlement with KPMG.  Lead Plaintiff Counsel's investigation included, *inter alia*: (i) review of Tenet's SEC filings, publicly disseminated financial statements and other public documents and analysis of KPMG's involvement in the Tenet audits; (ii) interviews with multiple witnesses and former Tenet employees having knowledge about the Company's activities during the relevant time period; (iii) extensive consultations with multiple experts and consultants in the fields of Medicare regulation, auditing, forensic accounting and finance to assist in developing both liability and damage theories in prosecuting the Action; and (iv) research of the applicable law with respect to Lead Plaintiff's claims and the potential defenses thereto.  This informal, ongoing component of the discovery process provided the foundation for Lead Plaintiff's allegations against all of the Defendants, including KPMG.  Joint Decl. ¶21.

In addition, Lead Plaintiff engaged in nineteen (19) months of discovery relating to KPMG -- which followed extensive discovery with the Tenet Defendants.  Lead Plaintiff (i) prepared and served subpoenas, FOIA requests and other discovery requests on third-parties; (ii) prepared, negotiated and responded to multiple sets of written discovery; (iii) reviewed, analyzed, and categorized over three million (3,000,000) pages of documents produced by the Tenet Defendants, KPMG, third-parties, and governmental entities;[6] (iv) conducted,

---

[6] The documents produced by KPMG included all relevant KPMG audit work papers for Tenet created in connection with its audits of Tenet's financial statements for fiscal years 2000 through 2002; all documents provided by KPMG to the SEC during the SEC's investigation concerning Tenet's receipt of Outliers; and transcripts of testimony given by KPMG employees to the SEC.  Joint Decl. ¶28.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

1  defended and attended thirty-five (35) merits depositions, including defending the

2  depositions of seven (7) representatives for the Lead Plaintiff; and (v) engaged in

3  extensive expert discovery, including reviewing and analyzing nine (9) expert

4  reports, opposition reports and reply reports submitted by the six (6) experts

5  retained by the Parties, and taking and defending six (6) expert depositions.  Joint

6  Decl. ¶¶26-33.

7      D.    **Settlement Negotiations**

8      The Parties initially began discussing settlement while discovery was

9  ongoing, participating in a two day formal mediation, on August 2 and 3, 2006,

10 with the assistance of Gary McGowan, an experienced mediator from Houston,

11 Texas.  In advance of the mediation, the Parties prepared detailed mediation

12 statements for Mr. McGowan's review.  However, at the mediation, the Parties

13 were too far apart in the settlement values that each side placed on the Action and

14 ceased discussions.  Joint Decl. ¶34.

15     After nearly one and one-half years of additional litigation and with trial

16 only months away, the Parties agreed to participate in a second formal mediation

17 session on January 30 and 31, 2008, with the assistance of the Honorable Daniel

18 J. Weinstein (Ret.).  Prior to the mediation, Lead Plaintiff submitted its previous

19 mediation statement, along with a supplemental letter and the Parties' dispositive

20 motion briefing for Judge Weinstein's review.  Although the Parties did not reach

21 an agreement at this second mediation, a week later, Judge Weinstein issued a

22 "mediator's proposal" to settle this Action for sixty five million dollars

23 ($65,000,000) in cash, a proposal which both sides ultimately accepted.

24 Thereafter, the Parties negotiated the terms of the Settlement and drafted the

25 relevant settlement papers, executing the Stipulation on June 10, 2008.  Joint

26 Decl. ¶¶35-36.

27

28

LIM, RUGER & KIM, LLP

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.   The Law Favors and Encourages Settlements

The settlement of complex class action litigation is clearly favored by the courts.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).[7]

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), the court's inquiry is limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (citing *Officers*, 688 F.2d at 625). Moreover, courts have found a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement.").  *See also* MANUAL FOR COMPLEX LITIGATION § 30.43 at 289 (3d ed. 2002); Newberg & Conte, NEWBERG ON CLASS

_____

[7]  The law always favors the compromise of disputed claims, *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910), including those claims asserted in stockholder class actions.  *See Principe v. Ukropina (In re Pacific Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995).

LIM, RUGER & KIM, LLP

ACTIONS, 11.42 (3d ed. 1992); 3B MOORE'S FEDERAL PRACTICE ¶23.1.24[2] (2d ed. 1992).

This initial presumption of fairness applies here because a substantial settlement was reached by experienced, fully-informed counsel after (i) nearly five years of litigation; (ii) significant investigation was completed, including both merits and experts discovery; and (iii) hard-fought negotiations were conducted, including two separate mediations spanning the course of four full days, presided over by seasoned mediators. Lead Plaintiff's Counsel and Lead Plaintiff were fully informed of the merits and weaknesses of the Action when the KPMG Settlement was reached, and thus, little doubt exists that the KPMG Settlement is entitled to a presumption of fairness.

**B.** **The Ninth Circuit's Standards Governing Class Action Settlements**

The standard for reviewing the proposed settlement of a class action in the Ninth Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable and adequate." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (citation omitted); *Officers*, 688 F.2d at 625. To that end, the Ninth Circuit has identified eight factors to consider in deciding whether to approve a proposed settlement of a class action:

> (1) the amount offered in settlement; (2) the reaction of the class members to the proposed settlement; (3) the strength of plaintiffs' case; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the risk of maintaining class action status throughout the trial; and (8) the absence of collusion.

*See Officers*, 688 F.2d at 625 (the importance of any one factor "depend[s] upon…the nature of the claim(s) advanced, the type(s) of relief sought, and the

LIM, RUGER & KIM, LLP

unique facts and circumstances presented by each individual case"). As demonstrated below, an analysis of each of the foregoing factors supports a finding that the KPMG Settlement is fair, reasonable and adequate.

## IV.    THE SETTLEMENT IS FAIR REASONABLE AND ADEQUATE

### A.    The Amount Offered in Settlement

This Settlement represents an excellent recovery for the KPMG Class. *See Officers*, 688 F.2d at 624; *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . " *Officers*, 688 F.2d at 624 (citation omitted). *See also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (a settlement is not to be judged against a speculative measure of what might have been achieved).

Here, the KPMG Class will receive sixty five million dollars ($65,000,000) in cash, plus interest, in exchange for the release of all claims asserted in this Action against KPMG. As evidenced by the expert reports submitted by Lead Plaintiff and KPMG in this matter, damages were a hotly contested issue in the litigation and the KPMG Class faced a substantial risk that a jury would ultimately award damages far short of $65 million. Indeed, Dr. Alan Shapiro, KPMG's expert, opined that the damages attributable to KPMG in this matter were zero.[8]  Joint Decl. ¶¶42-43. While Lead Plaintiff's financial expert David

---

[8]  Alternatively, in its Motion to Amend the Class Period filed with the Court on July 27, 2007, KPMG sought to truncate the class period previously certified by the Court on December 23, 2004, asserting that the class period should start later (on August 15, 2000, instead of the previously certified period starting January

LIM, RUGER & KIM, LLP

Fuller estimated that total damages to the KPMG Class from all defendants' misstatements were approximately $2.1 billion, there is no guarantee that the jury would have accepted Fuller's calculations. Moreover, even if the jury ultimately adopted all of Fuller's assumptions, opinions, and analyses, the jury likely would have been asked to assign only a portion of the aggregate damages number to KPMG. In light of the fact that Tenet and its executives were arguably the primary wrongdoers of the fraudulent scheme, there is a significant possibility that a jury would assign a diminished portion of the damages to KPMG's conduct vis-à-vis Tenet's, even if the jury fully adopted Fuller's damage models. Thus, even if Lead Plaintiff succeeded proving liability and the jury adopted Fuller's damage models, there was still a substantial risk that damages resulting from a trial would not have approached $65 million against KPMG. Joint Decl. ¶44.

## B.    The Reaction of the KPMG Class Members to the Proposed Settlement

The reaction of the KPMG Class to the Settlement is a significant factor in assessing its fairness and adequacy. *See Hughes v. Microsoft*, Nos. C98-1646C & C93-0178C, 2001 U.S. Dist. LEXIS 5976, at *24 (W.D. Wash. Mar. 21, 2001) (finding 9 objections and exclusions by only 1% of class indicated class approval and supported settlement). Indeed, "it is established that the absence of a large number of objections to a proposed class action settlement raises a strong

---

11, 2000) and end earlier (on October 28, 2002 -- the date the UBS Warburg's report casting doubt upon the legality and propriety of Tenet's historical outlier revenues was issued -- instead of November 7, 2002 -- the date whereby Tenet effectively admitted its outlier scheme, by firing certain of its top executives). Joint Decl. ¶44. While the Court agreed with KPMG to start the class period on August 15, 2000, the Court denied KPMG's request to end the class period on October 28, 2002. Joint Decl. ¶19. As a result, KPMG would likely advocate this position at trial and on appeal. If KPMG prevailed on this theory, damages for the KPMG Class would be substantially diminished. Joint Decl. ¶44.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Here, over 550,000 copies of the Notice have been mailed to potential KPMG Class Members. GCG Decl. ¶11. As of the September 19, 2008 deadline for filing objections and/or requests for exclusion, only a single recipient of the Notice has objected to any aspect of the KPMG Settlement. Joint Decl. ¶7. *See In re Mfrs Life Ins. Co. Premium Litig.*, MDL 1109, 1998 U.S. Dist. LEXIS 23217, at *24 (S.D. Cal. Dec. 18, 1998) ("[A] minuscule number of objectors is another factor favoring approval."). In addition, only eleven KPMG Class Member have requested exclusion from the KPMG Class.[9] Joint Decl. ¶7. *See* GCG Decl. ¶¶16. This lack of dissent and minimal number of exclusions strongly supports the Court's final approval of the KPMG Settlement.

Moreover, the single objection to the KPMG Settlement filed by Rinis Travel Service, Inc. Profit Sharing Trust ("Objector Rinis") is entirely unpersuasive. In its Objection, Objector Rinis argues that the KPMG Settlement is deficient because the Notice did not set forth the expected recovery by the KPMG Class if class counsel took the case to trial. Rinis Objection at 2.[10] Thus,

---

[9] A total of seventeen (17) requests for exclusion were previously received in connection with the Tenet Settlement, and pursuant to the Court's May 26, 2006 Order, fifteen (15) were granted exclusion. These fifteen (15) individuals and/or entities will automatically be excluded from the Settlement with KPMG, and will not be eligible for a distribution from the settlement proceeds obtained in either settlement. These previously excluded individuals and/or entities, however, may change their election and participate in the KPMG Settlement if, pursuant to the Notice, they affirmatively "opt-in" to the KPMG Settlement by submitting a letter stating their intention to the Court and counsel for both Lead Plaintiff and KPMG. To date, no "opt-in" letters have been received. Joint Decl. ¶7, fn. 4.

[10] *See* Docket No. 434 for objection filed by Objector Rinis.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

1    Objector Rinis claims that class members cannot make an adequate decision on
2    whether to opt-out of the KPMG Settlement because they are unable to assess the
3    merits of the proposed settlement.

4        Objector Rinis is wrong.  On page 5 of the Notice, KPMG Class Members
5    are directed to Exhibit A attached to the Notice.  Exhibit A sets forth the daily
6    inflation amounts for each day of the KPMG Class Period attributable to
7    KPMG's misstatements by Lead Plaintiff's expert David Fuller.  In other words,
8    Exhibit A contains Lead Plaintiff's "best case" scenario for damages per share if
9    the KPMG Class were successful at trial.  Thus, KPMG Class Members are easily
10   able to weigh the estimated average recovery per share under the terms of the
11   KPMG Settlement (on pages 1 and 5 of the Notice), with Lead Plaintiff's
12   assertion of damages if it were successful at trial (Exhibit A to the Notice).
13   Objector Rinis's argument to the contrary is plainly contradicted by the very
14   Notice of which it complains.  Its Objection, in no way, undermines the fairness
15   and/or reasonableness of the KPMG Settlement.

16       **C.    The Strength of Plaintiffs' Case Supports the Settlement**

17       An analysis of the third factor, the strength of Plaintiffs' case, also strongly
18   supports the Court's approval of the Settlement.  While the Court ultimately
19   sustained Lead Plaintiff's claims against KPMG at the summary judgment stage,
20   Lead Plaintiff nonetheless faced substantial risks with respect to proving liability,
21   loss causation and damages if the Action were to proceed to trial and on appeal.
22   Joint Decl. ¶¶39-45.  *See Omnivision*, 559 F. Supp. at 1041 ("[M]erely reaching
23   trial is no guarantee of recovery.").  *See also In re Aremisoft Corp. Sec. Litig.*,
24   210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel
25   might present at trial, victory in litigation is never guaranteed.").  *In re Michael
26   Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating
27   securities class action settlements, courts have long recognized such litigation to
28   be "'notably difficult and notoriously uncertain'").

LIM, RUGER & KIM, LLP

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

## 1.    The Risk of Establishing Liability

Lead Plaintiff clearly faced risks with respect to proving KPMG's liability. From the outset of the Action, KPMG took the position that Tenet's Outlier revenues were earned in accordance with Medicare rules and regulations, as well as GAAP.   In fact, during discovery, KPMG submitted testimony from two experts -- a health care expert and an accounting expert -- supporting those assertions.   At trial, there was certainly a risk that KPMG and its experts may have convinced a jury that Tenet's financial results were not misleading under the law, and thus, KPMG did nothing wrong by blessing them to investors.   Joint Decl. ¶¶40-41.

Moreover, KPMG possessed several arguments to potentially refute a finding of scienter.   For example, if KPMG were able to convince a jury that Tenet's Outlier revenues were proper and legal under Medicare, a jury could not find that KPMG knew or should have known the revenues were unearned. Further, even if the jury determined that Tenet's receipt of Outliers violated Medicare law and GAAP, KPMG would have contended that they were unaware of Tenet's misdeeds.   Specifically, KPMG would have argued that Outlier revenues were less than 5 percent of Tenet's total Medicare revenues -- thus, KPMG would have taken the position that it had no duty to investigate such an immaterial source of revenues during its audits.   As further support, KPMG would have argued that Tenet did not separate Outlier revenues on its consolidated financial statements -- the exact financial statements audited by KPMG.  Also, KPMG would have pointed to the fact that even Tenet's CEO and Chairman during the Class Period -- defendant Jeffrey C. Barbakow -- testified that he was unaware of the disproportionate quantity of Outlier revenues Tenet received during the Class Period.   If Tenet's own CEO was unaware of the magnitude of Outliers received by Tenet in the aggregate, KPMG would have

argued to the jury that there was no way the outside auditor was required to know such information.

Lead Plaintiff would expect KPMG to attempt to build foundations for all of the foregoing defenses, and others, and to assert many of them at trial. *See Churchill Vill. L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2003) (concluding district court properly weighed risk when it concluded defendant's belief that it had strong case on merits supported finding of risk). *See also In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing difficulty of establishing scienter, among other issues, at trial).

### 2.    The Risk of Establishing Loss Causation and Damages

Lead Plaintiff likely faced its largest obstacle with respect to proving loss causation and the KPMG Class' full amount of damages. In its motion for summary judgment and during the Parties' settlement discussions, KPMG consistently asserted that Lead Plaintiff would be unable to demonstrate that KPMG's audit reports had any material effect on Tenet's stock price, or distinguish what portion of the alleged inflation in Tenet's stock price was attributable to statements and omissions made by KPMG rather than Tenet management. KPMG, like Tenet and the Individual Defendants, also maintained throughout the Action that external factors, such as general market conditions, influenced the trading price of Tenet securities at various times during the relevant period.[11] KPMG further asserted in its motion for summary judgment

---

[11]  KPMG points to the following events, unrelated to Outliers, as possible catalysts for Tenet's stock price decline: (i) the raid of Tenet's Redding Medical Center by agents of the Federal Bureau of Investigation, the Office of Inspector General of the Health and Human Services and Internal Revenue Service on October 30, 2002, accusing two doctors at the hospital of performing unnecessary heart surgeries and Tenet's failure to disclose this fact until the following day; (ii)

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

that the decline in the price of Tenet securities on October 28, 2002 was part of a decline in stock prices "across the entire healthcare industry in the wake of the Warburg Report due to the industry's sensitivity to the likelihood of increased regulatory risk, increased regulatory scrutiny and concerns for the sustainability of outlier revenues."   In addition, KPMG asserted that Lead Plaintiff would ultimately be unable to demonstrate a "corrective" disclosure, since the US Warburg report did not refer to or concern KPMG's alleged misrepresentations and was based entirely on available public information.  Joint Decl. ¶42.  These contentions, in combination with the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), would undoubtedly present a significant defense for KPMG at trial.

The presentation of the foregoing and the Parties' differing arguments on loss causation and damages would have required extensive expert testimony at trial.   Although Lead Plaintiff was able to overcome the summary judgment hurdles and believes it would ultimately be able to present expert testimony to meet its burden on loss causation and damage issues, and to rebut any arguments that KPMG would make at trial, one can never predict how a jury will weigh the testimony of competing experts.  In other words, the crucial element of damages would likely be reduced at trial to a "battle of the experts."   *See, e.g., PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").  Lead Plaintiff and Lead Plaintiff's Counsel have sufficient experience to recognize that in such a battle, there exists the substantial possibility that a trier of fact could be swayed by KPMG's expert,

_____

Tenet's receipt of a subpoena by the Federal Trade Commission relating to a potential merger; and (iii) a nurses strike at two of Tenet's hospitals.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

who would seek to minimize or eliminate the amount of Lead Plaintiff's losses by showing that the losses were attributable to factors other than the alleged misstatements and omissions, potentially limiting substantially Lead Plaintiff's ability to prove damages.[12]

**D.**   **The Risk, Expense, Complexity, and Likely Duration of the Litigation**

Courts have consistently recognized that the risk, expense, complexity, and possible duration of the litigation are critical factors in evaluating the reasonableness of a settlement.  *Torrisi*, 8 F.3d at 1376 (". . .[T]he cost, complexity and time of fully litigating the case all suggest that this settlement was fair."); *Officers*, 688 F.2d at 626 (expense and possible duration of litigation are major factors to consider in evaluating reasonableness of settlement).  In fact, "in most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telcoms. Coop.*, 221 F.R.D. at 526 (finding that even though proposed settlement reached on eve of trial, this factor supported approval because trial would be lengthy, involve significant number of lay witnesses and experts, present complex issues, and appeal would have followed) (citations omitted).

---

[12]   In fact, even if Lead Plaintiff was successful in proving its claims against KPMG, the PSLRA provides for proportionate fault in the form of judgment reduction.  15 U.S.C. § 78u-4(f)(7)(B).  In this respect, because KPMG was a non-settling defendant in connection with the Tenet Settlement, KPMG could argue that the overwhelming majority of the fraud was committed by Tenet and the Individual Defendants (together, the "Tenet Defendants") and that any judgment obtained by Lead Plaintiff against KPMG would first have to be reduced by the greater of the amount of the settlement with the Tenet Defendants or the Tenet Defendants' percentage of fault as compared to the fault determined for all Defendants combined.  Joint Decl. ¶44.

LIM, RUGER & KIM, LLP

As described in detail above, Lead Plaintiff faced risks in establishing liability, causation and damages.  Lead Plaintiff also faced the risks inherent in taking a case to trial, *i.e.* that it is impossible to predict how a trier of fact will construe the conflicting evidence and testimony presented by the Parties, especially in this Action, where the evidence that would be presented centers upon archaic and complicated Medicare regulations that are confounding to lawyers, let alone the lay people who would be hearing testimony during a trial. Joint Decl. ¶53.  *See Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (noting that "stockholder litigation is notably difficult and notoriously uncertain").  *See also In re Clarent Corp. Sec. Litig.*, No. C01-03361 CRB (JCS), slip op. at 2 (N.D. Cal. Apr. 18, 2005) (defense verdict following trial).

The expense and delay of further litigation also counsel in favor of the KPMG Settlement.  Although Lead Plaintiff had litigated this Action through discovery, summary judgment, and was only months away from trial when the KPMG Settlement was reached, the costs associated with preparation for trial, a trial and the inevitable post-trial appeals, especially in this Action which would require testimony from multiple experts on accounting, auditing, damages and the healthcare industry, would be extraordinarily high.  Moreover, one can easily conclude that this Action, if taken to trial, would require tremendous preparation by both sides, not to mention many hours of the Court's time and resources.  As a result, given the post-trial appeals that would likely follow, additional years could pass before the KPMG Class would receive a recovery, if any.  *In re Heritage Bond Litig.*, MDL Case Co. 02-ML-1475DT, 2005 U.S. Dist. LEXIS 13555, at *28 (C.D. Cal. June 10, 2005) ("much of the value of a settlement lies in the ability to make funds available promptly") (citation omitted).

LIM, RUGER & KIM, LLP

### E.  <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.  At a minimum, the court must possess sufficient information to raise its decision above mere conjecture."  Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.45 (3d ed. 1992).

By the time the KPMG Settlement was reached, Lead Plaintiff's Counsel had sufficient knowledge and understanding of the merits of the claims alleged in the Action and the defenses that would be asserted by KPMG to determine that the KPMG Settlement confers a substantial benefit upon the KPMG Class. Lead Plaintiff's Counsel have litigated this Action vigorously for nearly five years, through multiple amendments to the complaint, three rounds of dismissal motions, class certification, the completion of both merits and expert discovery, summary judgment, and extensive dispositive motion practice.  In addition to their ongoing investigation which included interviews with former Tenet employees, Lead Plaintiff's Counsel have reviewed, analyzed and categorized over three million (3,000,000) pages of documents produced by the Tenet Defendants, KPMG and certain third-parties during discovery, and have taken and/or participated in thirty-five (35) depositions, including the depositions of the Parties' six (6) expert witnesses.  Lead Plaintiff's Counsel also participated in an intense negotiation process, involving two separate formal mediations presided over by experienced mediators.  Additionally, throughout the duration of the Action, Lead Plaintiff's Counsel have consulted with accounting, auditing, Medicare, and damages experts.  Joint Decl. ¶¶33, 34-36.  *See Rodriguez v. West Publishing Corp.*, Case No. CV 05-3222 R (MCx), 2007 U.S. Dist. LEXIS

LIM, RUGER & KIM, LLP

74767, *31 (C.D. Cal. Sept. 10, 2007) (finding this factor supported settlement where class counsel conducted extensive discovery, including more than twelve (12) depositions and the review of over four hundred thousand (400,000) pages of documents, engaged in numerous discovery dispute and summary judgment had already been decided).   In light of these efforts, little doubt exists that Lead Plaintiff's Counsel had sufficient information in their possession to evaluate the strengths and weaknesses of the KPMG Class' claims and KPMG's defenses, and the likelihood of obtaining a larger recovery from KPMG following a lengthy and complex trial.  Thus, this factor also supports the Court's approval of the KPMG Settlement.

## F.   The Experience and Views of Counsel Supports the Settlement

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation…Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 528 (citations omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding counsel's belief that proposed settlement represented most beneficial result for class compelling factor in its approval); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).

Lead Plaintiff's Counsel -- SBTK and Lite DePalma -- are highly accomplished plaintiffs' class action firms.  Liaison Counsel, LRK, is similarly experienced in complex litigation.  In addition, as set forth above, Lead Plaintiff's Counsel have become extremely knowledgeable of all the factual circumstances underlying Lead Plaintiff's claims and the legal arguments that could be made in support and in defense of these claims.  Lead Plaintiff's Counsel have vigorously

prosecuted this Action against the Defendants for nearly five years, and in light of the risks involved in taking this Action to trial, believe that the Settlement is in the best interests of the KPMG Class.   Joint Decl. ¶37.   Firm biographies for SBTK and Lite DePalma are attached to the Joint Declaration as Exhibits 3 and 4. *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

Further, as set forth in the Declaration of Carol G. Jacobson in Support of Lead Plaintiff's Motion for Final Approval of the KPMG Settlement, Plan of Allocation, and the Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement to Lead Plaintiff (the "Jacobson Declaration"), attached as Exhibit 6 to the Joint Declaration, Lead Plaintiff's Counsel were hired by Lead Plaintiff as its counsel for this Action following a lengthy competitive process.  Lead Plaintiff itself is a sophisticated government entity which has been heavily involved in the litigation throughout its pendency.   As explained in the Jacobson Declaration, various State personnel of relevant and diverse financial and legal backgrounds and experience were involved in each significant decision that was made, including attending and playing a vital role in the mediation that led to the KPMG Settlement.   Jacobson Decl. ¶¶13-14.   Lead Plaintiff fully supports the KPMG Settlement and is very pleased that the KPMG Class will be recovering a significant amount in addition to the previously obtained Tenet Settlement. *See* Jacobson Decl. ¶22.

### G. The Risks of Maintaining the Class Action Through Trial Support the Settlement

During the Action, KPMG argued that a shorter class period than the KPMG Class Period would be appropriate -- a position KPMG would have likely asserted at trial and a position, which if accepted by a jury, would significantly diminish the KPMG Class' maximum recoverable damages.   Joint Decl. ¶44.

LIM, RUGER & KIM, LLP

1  Finally, although the KPMG Class has already been certified, there is no

2  assurance of maintaining its status as a class since courts may exercise their

3  discretion to re-evaluate the appropriateness of class certification at any time.  *See*

4  *Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified,

5  "there is no guarantee the certification would survive through trial, as Defendants

6  might have sought de-certification or modification of the class").   Thus, the

7  KPMG Settlement avoids any uncertainty with respect to this issue.

8  ## H.   The Absence of Fraud or Collusion Supports the Settlement

9       As discussed above and in the Joint Declaration, the Parties engaged in

10 multiple years of arm's-length settlement negotiations prior to reaching the

11 KPMG Settlement, including participation in two separate formal mediations,

12 spanning the course of four full days and with the assistance of two seasoned

13 mediators.   At all times during their negotiations, both sides zealously and

14 professionally advocated their respective positions.  Joint Decl. ¶¶34-36.  But for

15 the KPMG Settlement -- an agreement that Lead Plaintiff's Counsel believes to

16 be in the best interests of the KPMG Class in light of the strengths of Lead

17 Plaintiff's claims and the risks involved in further litigation -- Lead Plaintiff's

18 Counsel were prepared to take this Action to trial.  Thus, there is no doubt that

19 the KPMG Settlement was reached at arm's-length and completely devoid of any

20 fraud or collusion.  *See In re Immune Response*, 497 F. Supp. 2d 1174 (finding

21 settlement involved neither fraud nor collusion where it was product of arm's

22 length negotiations and hard-fought litigation by experienced counsel on both

23 sides, and where mediation occurred with assistance of experienced mediators).

24      Therefore, Lead Plaintiff's Counsel respectfully submit that the analyses

25 set forth above and all of the circumstances of the KPMG Settlement demonstrate

26 that the KPMG Settlement is fair, reasonable and adequate and warrants Court

27 approval.

28

LIM, RUGER & KIM, LLP

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

1  **V.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND**

2  **ADEQUATE**

3        Upon approval of the KPMG Settlement and entry of an order approving

4  distribution, the KPMG Gross Settlement Fund, less all taxes, approved costs

5  (including the cost of notice), Court-awarded attorneys' fees and expenses and

6  any reimbursement to Lead Plaintiff (the "KPMG Net Settlement Fund"), shall be

7  distributed to KPMG Class Members who are not otherwise excluded from the

8  KPMG Class and who submit valid Proof of Claim and Release forms ("Proofs of

9  Claim") to the Claims Administrator ("Authorized Claimants").[13]   The proposed

10 Plan of Allocation (the "Plan") contained in the Notice sets forth the manner in

11 which the KPMG Net Settlement Fund shall be distributed to Authorized

12 Claimants.  Joint Decl. ¶47.  *See also* GCG Decl. Exh. A.

13        The standard for approval of a plan of allocation is the same as the standard

14 for approving the settlement as a whole -- the plan must be fair, reasonable and

15 adequate.  *Class Plaintiffs*, 955 F.2d at 1284.  An allocation formula need only

16 have a reasonable basis, particularly if recommended by experienced class

17 counsel.  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38.  Here, Lead

18 Plaintiff's Counsel prepared the Plan after careful consideration and detailed

19 analysis and with the assistance of Lead Plaintiff's damage expert, David N.

20 Fuller, CFA, ASA.  The Plan is based upon the damage report submitted by Lead

21 Plaintiff's damage expert in connection with its opposition to KPMG's summary

22 judgment motion.  Joint Decl. ¶47.  Moreover, "[i]t is reasonable to allocate the

23

24 _____

25 [13]   "Authorized Claimant" is defined in the Stipulation as any KPMG Class

26 Member who has submitted a valid Proof of Claim in connection with the Tenet

27 Settlement or who submits a valid and timely Proof of Claim to the Claims

28 Administrator in connection with this Settlement.

LIM, RUGER & KIM, LLP

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

1  settlement funds to class members based on the extent of their injuries or the

2  strength of their claims on the merits." *See Omnivision*, 559 F. Supp. 2d at 1045.

3      The Plan reflects Lead Plaintiff's contention that because of

4  misrepresentations and omissions concerning Tenet's financial condition and

5  prospects, the prices of Tenet securities were inflated artificially during the

6  KPMG Class Period (August 15, 2000 through and including November 7, 2002).

7  This Plan takes into account Lead Plaintiff's contention of the estimated inflation

8  per security for each day of the KPMG Class Period.  The formulas contained in

9  the Plan utilize the estimated inflation amounts on the date of purchase and on the

10 date of sale, if any, to calculate each KPMG Class Member's recognized claim.

11 A schedule listing the estimated inflation amounts for each day of the relevant

12 time period is annexed to the Notice.[14]   Joint Decl. ¶48.  *See In re Broadcom*

13 *Corp. Sec. Litig.*, Case No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS

14 41976, at *17 (C.D. Cal. Sept. 12, 2005) (approving plan of allocation where the

15 allocation was pro rata across the Class).

16     The Plan was fully disclosed in the Notice that was sent to over 550,000

17 potential KPMG Class Members.  Joint Decl. ¶50.  *See also* GCG Decl. ¶11.[15]

18 Despite the fact that the deadline for objecting to the Plan of Allocation passed on

19 September 19, 2008, not a single KPMG Class Member has filed an objection to

20

21 [14]  Overall, if the total recognized losses for all Authorized Claimants exceeds the
   KPMG Net Settlement Fund, each Authorized Claimant's share of the KPMG

22 Net Settlement Fund will be determined based upon the percentage that his, her

23 or its recognized loss bears to the total recognized losses for all Authorized

24 Claimants.  Joint Decl. ¶49, fn. 12.

25 [15]  As stated previously, KPMG Class Members who already submitted a valid
   Proof of Claim in connection with the Tenet Settlement are not required to submit

26 another Proof of Claim in order to participate in the Settlement with KPMG and

27 will automatically be included in the KPMG Settlement.  Joint Decl. ¶6, 50, fn.

28 13.

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP

1   the Plan itself.  *See* IV(A) above.  Accordingly, Lead Plaintiff's Counsel believe

2   that this method of allocation is fair, reasonable and adequate and that the Plan

3   should be approved.

4   **VI.    CONCLUSION**

5          For the foregoing reasons, Lead Plaintiff and Lead Plaintiff's Counsel

6   respectfully submit that the KPMG Settlement and Plan of Allocation are fair,

7   reasonable, and adequate, and respectfully request this Court to grant final

8   approval of the KPMG Settlement and Plan of Allocation.

9

10  Dated:  October 13, 2008                 **LIM, RUGER & KIM, LLP**

11

12                                  By:  _____/s/ Christopher Kim_____

13                                       Christopher Kim, Esq.
                                         Lisa J. Yang, Esq.

14                                       1055 West Seventh Street, Suite 2800

15                                       Los Angeles, California 90017

16                                       *Lead Plaintiff's Liaison Counsel*

17                                       David Kessler, Esq.

18                                       Gregory Castaldo, Esq.
                                         Andrew L. Zivitz, Esq.

19                                       **SCHIFFRIN BARROWAY TOPAZ &**

20                                       **KESSLER, LLP**
                                         280 King of Prussia Road

21                                       Radnor, Pennsylvania 19087

22                                       Allyn Z. Lite, Esq.

23                                       Joseph J. DePalma, Esq.

24                                       **LITE DEPALMA GREENBERG &**
                                         **RIVAS, LLC**

25                                       Two Gateway Center, 12th Floor

26                                       Newark, New Jersey 07102

27                                       *Lead Plaintiff's Counsel*

28

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT

LIM, RUGER & KIM, LLP