Christopher Kim, Esq. (Bar No. 082080)
Lisa J. Yang, Esq. (Bar No. 208971)
**LIM RUGER & KIM, LLP**
1055 West Seventh Street, Suite 2800
Los Angeles, California 90017
Telephone: (213) 955-9500
email: christopher.kim@lrklawyers.com
         lisa.yang@lrklawyers.com

David Kessler, Esq.
Gregory M. Castaldo, Esq.
Andrew L. Zivitz, Esq.
**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Counsel for Plaintiffs

Allyn Z. Lite, Esq.
Joseph J. DePalma, Esq.
**LITE DEPALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| In re: TENET HEALTHCARE CORP. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates to<br>**ALL ACTIONS.**<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.  CV-02-8462-RSWL (Rzx)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REIMBURSEMENT TO LEAD PLAINTIFF**<br><br>Date: October 21, 2008<br>Time: 10:00 a.m.<br>Judge: The Hon. Ronald Lew<br>Courtroom: 21 |

LIM, RUGER & KIM, LLP

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................iii

I.    SUMMARY OF THE ARGUMENT...........................................1

II.   HISTORY AND BACKGROUND OF THE ACTION ...........................3

      A.   Procedural History ...........................................................3

      B.   Lead Plaintiff's Factual Investigation and Discovery ....................6

           1.   Discovery With KPMG ...........................................6

           2.   Prior Discovery With Tenet Defendants ..............................8

      C.   Settlement Negotiations ....................................................9

III.  AWARD OF ATTORNEYS' FEES ........................................10

      A.   The Legal Standards Governing the Award of Attorneys' Fees
           in Common Fund Cases Support the Requested Award................10

      B.   Standard for Approval of Attorneys' Fees in the
           Ninth Circuit .................................................................11

      C.   Analyses Under the Percentage Method, the Lodestar
           Method and The *Vizcaino* Factors Support Lead Plaintiff's
           Counsel's Fee Request ....................................................13

           1.   The Results Achieved ...........................................13

           2.   The Risk of Litigation...........................................15

                a.   Establishing Liability .................................15

                b.   Establishing Loss Causation and Damages...............16

           3.   The Skill Required and the Quality of Representation.........18

i

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

        4.      The Contingent Nature of the Fee and the Financial Burden Carried by Lead Plaintiff's Counsel .......................20

        5.      Awards in Similar Cases.......................................................22

        6.      An Analysis of Lead Plaintiff's Counsel's Lodestar Supports the Requested Fee Award......................................23

    D.     The Reaction of the KPMG Class Supports the Fee Request.........25

IV.    LEAD PLAINTIFF'S COUNSEL ARE ENTITLED TO REIMBURSEMENT FOR THEIR REASONABLE LITIGATION EXPENSES ..........................................................................................28

V.     REIMBURSEMENT SHOULD BE AWARDED TO LEAD PLAINTIFF ..........................................................................................30

VI.    CONCLUSION ..........................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ......................................................................21

*Backman v. Polaroid Corp.*,
 910 F.2d 10 (1st Cir. 1990) ...........................................................................21

*In re Blech Sec. Litig.*,
 Master File No. 94 Civ. 7696,
 2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 19, 2000) ..............................25

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980).......................................................................................10

*Camden I Condominium* Ass'n *v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) ......................................................................12

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ..........................................................................18

*Chem. Bank v. City of Seattle*
 (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*) ("*WPPSSS*"),
 19 F.3d 1291 (9th Cir. 1994) ..........................................................10, 11, 14

*Churchill Vill. L.L.C. v. GE*,
 361 F.3d 566 (9th Cir. 2003) ........................................................................16

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ..........................................................................20

*In re Cont'l Ill. Sec. Litig.*,
 962 F.2d 566 (7th Cir. 1992) .........................................................................11

*In re DJ Orthopedics, Inc. Secs. Litig.*,
 No 01-CV-2238-K (RBB),
 2004 U.S. Dist. LEXIS 11457 (S.D. Cal. June 21, 2004) ............................13

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005).................................................................................17, 21

LIM, RUGER & KIM, LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ............................................................... 19

*Fla. Ex rel. Butterworth v. Exxon Corp.*
    (*In re Petroleum Prods. Antitrust Litig.*),
    109 F.3d 602 (9th Cir. 1997) ...................................................................... 23

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995).................... 11

*Glass v. UBS Fin. Servs.*,
    No. C-06-4068 MMC, 2
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)................................ 31

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ...................................................................... 11

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .......................................................................... 29

*In re Heritage Bond Litig.*,
    MDL Case No.: 02-ML-1475 DT,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).....12, 18, 22, 23, 25

*In re Immune Response Secs. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................................ 16

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996) ........................................................................ 11

*Karcich v. Stuar* (*In re Ikon Office Solutions, Inc., Sec. Litig.*),
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................... 18

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987) ....................................................................... 21

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001)........................................................... 27

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) ....................................................................... 15

LIM, RUGER & KIM, LLP

iv

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004) ................................................................27

*In re Media Vision Technology Secs. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1995) .............................................................28

*In re MicroStrategy, Inc. Sec. Litig.*,
  172 F. Supp. 2d 779 (E.D. Va. 2001) ...........................................................28

*Miller v. Thane, Int'l, Inc.*,
  372 F. Supp. 2d 1198 (C.D. Cal. 2005) ........................................................21

*In re Omnivision Techonologies, Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................11, 26, 28, 31

*In re PaineWebber Ltd. Pships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................18

*In re Patriot American Hospitality Sec. Litig.*,
  MDL No. C-00-1300 VRW,
  2005 U.S. Dist. LEXIS 40993 (N.D. Cal. Nov. 30, 2005) ............................25

*Paul, Johnson, Alston, & Hunt v. Graulty*,
  886 F. 2d 268 (9th Cir. 1989) .................................................................10, 22

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .................................................................12, 22

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) .............................................................................11

*In re Rite Aid Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ..........................................................................23

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ....................................................................21

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...........................................................11, 22, 26

LIM, RUGER & KIM, LLP

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIM, RUGER & KIM, LLP

*Smith v. Crystian*,
  No. 02-1287,
  2004 U.S. App. LEXIS 4955 (5th Cir. 2004) ................................................ 15

*Stoneridge Inv. Partners, LLC v. Scientific-Atlantic, Inc.*,
  1285 S. Ct. 761 (2008) ................................................................................. 21

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ....................................................................... 12

*In re Veritas Software Corp. Sec. Litig.*,
  Master File No. C-03-0283 MMC,
  2005 U.S Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005) ........................... 22

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ....................................................................... 10

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..............................................................passim

*West v. Circle K Stores, Inc.*,
  No. Civ. 5-04-0438 WBS GGH,
  2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 19, 2006) ........................... 12

*Winkler v. NRD Mining, Ltd.*,
  198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) .................................................. 21

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................... 31


**Unpublished Opinions**

*Dusek v. Mattel, Inc.*,
  Nos. CV 99-10864-MRP (CWx), CV 99-10368 MRP
  (C.D. Cal. Sept. 29, 2003) ........................................................................... 22


*In re Gemstar-TV Guide Int'l Inc. Sec. Litig*,
  Master File No. 02-CV-2775 MRP (PLAz) (C.D. Cal. Sept. 13, 2004) ....... 22

*In re Informix Corp. Sec. Litig.*,
  No. 97-CV-01289-CRB (N.D. Cal. Nov. 23, 1999) ......................................23

*In re Methionine Antitrust Litig.*,
  Master File No. C 99-3491 CRB (N.D. Cal. Oct. 3, 2002) ..........................23

*In re Sepracor Inc. Sec. Litig.*,
  C.A. Nos. 02-12235-MEL & 02-12338-MEL (D. Mass. Sept. 6, 2007).......22

*In re Transkaryotic Therapies, Inc. Securities Litig.*,
  Civil Action No. 03-10165-RWZ (D. Mass. June 3, 2008)....................22, 31


**Statutes**

15 U.S.C. § 78u-4(a)(6) ..........................................................................12

15 U.S.C. § 78u-4(f)(7)(B) ......................................................................18

15 U.S.C. § 78u-4(a)(4) ..........................................................................30


**Other Authorities**

H.R. Conf. Rep. No. 104–369 ...................................................................27

H.R. Conf. Rep. No. 104–369 ...................................................................28

PRIVATE SECURITIES LITIGATION REFORM ACT (the "PSLRA") ......................12

SECURITIES CLASS ACTIONS, 104 Yale L.J. 2053 (1995) ..................................28

LIM, RUGER & KIM, LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

In connection with final approval of the Settlement[1] in the above-captioned action (the "Action"), Court-appointed Lead Plaintiff's Counsel, the law firms of Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") and Lite DePalma Greenberg & Rivas, LLC ("Lite DePalma"), and Liaison Counsel, Lim, Ruger & Kim, LLP ("LRK"), hereby respectfully move this Court for: (i) reimbursement of $1,762,232.15 in expenses that Lead Plaintiff's Counsel incurred in successfully prosecuting Lead Plaintiff's claims against KPMG LLP ("KPMG"), plus interest earned at the same rate earned on the Settlement Amount (the "Expense Award"), and (ii) an award of attorneys' fees in the amount of twelve percent (12%) of the KPMG Gross Settlement Fund after first reducing the KPMG Gross Settlement Fund by the Expense Award (a "12% Net Fee Award"). Lead Plaintiff's Counsel also respectfully move this Court for reimbursement to Lead Plaintiff, the State of New Jersey and its Division of Investment, in the amount of fifty two thousand dollars ($52,000.00) for its reasonable costs and expenses directly relating to its representation of the KPMG Class.

## I.     SUMMARY OF THE ARGUMENT

As described more fully in the Joint Declaration of Gregory M. Castaldo and Allyn Z. Lite in Support of Lead Plaintiff's Motion for Final Approval of Settlement, Plan of Allocation, Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Reimbursement to the Lead Plaintiff (the "Joint Declaration" or "Joint Decl."), the proposed Settlement of sixty five million dollars ($65,000,000.00) in cash, plus interest -- among the largest settlements ever obtained from an outside auditing firm in a securities class action -- is, by any measure, an excellent result for the KPMG Class. Further, this Settlement

LIM, RUGER & KIM, LLP

---

[1] This Memorandum incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated as of June 10, 2008 (the "Stipulation").

1

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

avoids significant hurdles that Lead Plaintiff would have faced in establishing KPMG's liability at trial, particularly, whereas here, the Court and the jury would see that a substantial recovery was already obtained from the "primary" wrongdoing corporation and its officers and directors, and might attach only a small percentage of liability, if any, to KPMG.  The Settlement also avoids the significant costs that accompany a trial and the inevitable post-trial appeals.

This excellent result would not have been possible without the efforts of Lead Plaintiff's Counsel and Liaison Counsel, who devoted nearly five years to the prosecution and settlement of this Action on a wholly contingent basis. Despite the formidable opposition presented by KPMG, Lead Plaintiff's Counsel were able to sufficiently develop their case through a far-reaching investigation and extensive discovery to the point which enabled them to engage in protracted and hard-fought settlement negotiations with KPMG and to obtain a substantial settlement for the KPMG Class.  Without the skill, advocacy and diligent efforts in the prosecution and settlement of Lead Plaintiff's claims exhibited by Lead Plaintiff's Counsel and Liaison Counsel, this Action would have continued to trial, risking the ability of the KPMG Class to collect the valuable benefit secured by the Settlement and creating a substantial possibility that they would recovery less than the Settlement Amount, or nothing at all, after a trial and the inevitable post-trial motions and appeals.

As compensation for these substantial efforts, Lead Plaintiff's Counsel respectfully request that the Court award reimbursement of expenses in the amount of $1,762,232.15, and a 12% Net Fee Award, plus interest earned at the same rate as the Settlement Amount on both the Expense Award and the 12% Net Fee Award (collectively, the "Fee and Expense Request").  The Fee and Expense Request is based directly upon the retainer agreement that Lead Plaintiff, a sophisticated investor and litigant, negotiated with Lead Plaintiff's Counsel prior to the commencement of the Action.  The Court has previously utilized this same

2

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

retainer arrangement in awarding a 14.771% fee in connection with the Tenet Settlement. *See* fn 5 below. The instant Fee and Expense Request merely represents a continuation of the downward sliding scale set forth in the retainer agreement. It is fully justified by the facts of this case and the applicable law, and has been implicitly accepted by the KPMG Class as only one objection from the KPMG Class to the Fee and Expense Request has been received. Lead Plaintiff's Counsel also respectfully request reimbursement to the Lead Plaintiff for its representation of the KPMG Class, which, as demonstrated below, is also fair and reasonable and warrants the Court's approval.

## II.    HISTORY AND BACKGROUND OF THE ACTION[2]

### A.    Procedural History

Following a far-reaching investigation and the review of documents produced by Tenet Healthcare Corporation ("Tenet") during discovery, Lead Plaintiff filed a motion for leave to file the Third Amended Class Action Complaint for Violations of the Federal Securities Laws (the "TCAC") on March 28, 2005, seeking to add KPMG as a defendant.[3]   On April 1, 2005, KPMG sought leave to intervene and subsequently opposed Lead Plaintiff's motion to amend. The Court granted Lead Plaintiff's motion over KPMG's objection, and the TCAC became the operative complaint. Joint Decl. ¶14.

---

[2]   The Court is respectfully referred to the Joint Declaration for a detailed description of the factual and procedural history of the Action, including as it relates to the Tenet Defendants, the claims asserted, Lead Plaintiff's investigation and discovery, and the negotiations leading to the Settlement. Joint Decl. ¶¶9-36. For the Court's convenience, a short description of the foregoing is provided herein.

[3]   On May 16, 2003, Lead Plaintiff and KPMG entered into a tolling agreement extending the statute of limitations for filing a complaint against KPMG until March 28, 2005. Joint Decl. ¶13.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

Prior to the filing of the TCAC, Lead Plaintiff litigated this Action against the Tenet Defendants for several years -- through two amended complaints, two rounds of motions to dismiss, discovery and class certification -- efforts which also aided Lead Plaintiff in prosecuting its claims against KPMG.  The TCAC alleged the same claims against the Tenet Defendants as previously set forth in the Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SCAC"),[4] while adding allegations relating to KPMG pursuant to Section 10(b) of the Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  Specifically, the TCAC alleged that KPMG falsely certified that (i) Tenet's financial statements for fiscal years 2000, 2001 and 2002 were fairly presented in accordance with generally accepted accounting principles ("GAAP"), and (ii) KPMG's audits of these financial statements were performed in accordance with generally accepted accounting standards ("GAAS").  Joint Decl. ¶15.  *See also* TCAC at §VIII, ¶¶340-365.

KPMG filed a motion to dismiss the TCAC on September 9, 2005.  Lead Plaintiff opposed KPMG's motion to dismiss on October 22, 2005, and on November 18, 2005, KPMG filed a reply in further support of its motion.  On December 5, 2005, the Court denied KPMG's motion to dismiss and sustained the TCAC.  Shortly thereafter, on January 20, 2006, KPMG answered the TCAC,

---

[4]  As set forth in the SCAC filed on January 15, 2004, Lead Plaintiff alleged, among other things, that the Tenet Defendants defrauded Medicare -- a program established to provide healthcare insurance to the elderly and disabled -- out of hundreds of millions of dollars in unearned "outlier" payments ("Outliers"), by manipulating the statutory formula that governed the computation of such payments by increasing Tenet's charges, while its actual costs remained static. As a result, Lead Plaintiff alleged that Tenet's receipt of such Outliers served to artificially inflate Tenet's financial results throughout the relevant period.  Joint Decl. ¶¶9-11.

1   and the Parties commenced discovery, engaging in extensive, and contested,

2   merits and expert discovery as described below.[5]  Joint Decl. ¶¶16-17.

3           Following the completion of discovery, the Parties engaged in extensive

4   dispositive motion practice and trial preparation.  On July 27, 2007, Lead Plaintiff

5   filed a motion for sanctions against KPMG for spoliation of evidence, seeking,

6   *inter alia*, default judgment, and on the same day, KPMG filed several motions --

7   a motion for summary judgment, three *Daubert* motions to exclude testimony of

8   Lead Plaintiff's experts Harris L. Devor, CPA, Paul L. Chiafullo and David N.

9   Fuller, CFA, ASA, and a motion to amend the class period.  Additionally, on

10  October 5, 2007, KPMG filed two motions *in limine* to preclude the Court's

11  consideration of certain evidence in connection with the foregoing motions and

12  trial.  These motions were fully briefed by both sides.[6]  By Order dated December

13  5, 2007, the Court (i) denied Lead Plaintiff's motion for sanctions, KPMG's

14  motion for summary judgment and KPMG's *Daubert* motions to exclude the

15  testimony of Messrs. Devor and Fuller, in their entirety; (ii) granted in part and

16  denied in part KPMG's *Daubert* motion to exclude the testimony of Mr.

17  Chiafullo; (iii) granted KPMG's motion to start the KPMG Class Period on

18  August 15, 2000 (instead of the previously certified beginning date of January 11,

19  2000); (iv) denied KPMG's motion to end the KPMG Class Period on October

20

21   [5]  During this time, Lead Plaintiff reached a settlement with the Tenet

22  Defendants for $216,500,000 million in cash, plus additional non-monetary,

23  corporate governance relief (the "Tenet Settlement").  The Court approved the

24  Tenet Settlement on May 26, 2006.  Joint Decl. ¶4, fn 2.

25   [6]  This motion practice involved extensive evidentiary considerations involving

26  the review and consideration of millions of pages of documents and deposition

27  transcripts.  Counsel for the Parties spent thousand of hours conducting fact

28  discovery and legal research, drafting the motions, oppositions and reply papers

thereto, and preparing for oral argument. Joint Decl. ¶20, fn. 8.

LIM, RUGER & KIM, LLP

28, 2002 (instead of the previously certified end date of November 7, 2002); and (v) granted both of KPMG's motions *in limine*. Joint Decl. ¶¶18-19.

The Parties were actively preparing for trial, which was scheduled to commence on May 13, 2008, when the Parties reached their tentative agreement to settle the Action. Joint Decl. ¶20.

## B. Lead Plaintiff's Factual Investigation and Discovery

The Settlement is the culmination of nearly five years of active litigation, including formal discovery and an extensive and ongoing investigation, and is directly attributable to the skill and diligent efforts of Lead Plaintiff's Counsel and Liaison Counsel. Even before Lead Plaintiff filed its initial complaint in 2002, Lead Plaintiff's Counsel began the first phase of their investigation, which included, among other things: (i) review and analysis of Tenet's SEC filings and publicly disseminated financial statements; (ii) interviews with multiple witnesses and former Tenet employees having knowledge about the Company's activities during the relevant time period; (iii) consultations with multiple experts and consultants in the fields of Medicare regulation, auditing, forensic accounting and finance; and (iv) extensive research of the applicable law with respect to Lead Plaintiff's claims and the potential defenses thereto. This informal, ongoing component of the discovery process provided the foundation for Lead Plaintiff's allegations against all of the Defendants, including KPMG. Joint Decl. ¶21.

## 1. Discovery with KPMG

Once the TCAC was sustained against KPMG and the automatic discovery stay of the Private Securities Litigation Reform Act ("PSLRA") lifted, the Parties embarked on discovery efforts which would span the course of the next nineteen (19) months. Lead Plaintiff served KPMG with its first request for documents on March 1, 2006, followed by a second request for documents in April 2006, and KPMG responded to these requests on April 4, 2006 and May 9, 2006, respectively. In response to Lead Plaintiff's discovery requests, KPMG

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

produced, in four waves, hundreds of thousands of pages of documents on April 13, 2006, May 2, 2006, May 9, 2006 and May 15, 2006, which documents included, inter alia, all relevant KPMG audit work papers created in connection with KPMG's audits of Tenet's financial statements for fiscal years 2000 through 2002; all documents provided by KPMG to the SEC during the SEC's investigation of Tenet's receipt of Outliers; and transcripts of testimony given by KPMG employees to the SEC.[7]   On July 5, 2006, Lead Plaintiff served KPMG with its first set of interrogatories.  Joint Decl. ¶28.

During this same time, KPMG served Lead Plaintiff with two sets of document requests on April 21, 2006 and May 10, 2006.   Lead Plaintiff responded to these requests on May 24, 2006 and June 9, 2006 and produced documents related to its transactions in Tenet securities.   Thereafter, KPMG served Lead Plaintiff with a third set of document requests on October 24, 2006 and interrogatories on November 20, 2006, which Lead Plaintiff responded to on November 30, 2006 and December 29, 2006, respectively.   Lead Plaintiff also served KPMG with a third, and final, set of document requests on January 10, 2007, and noticed and deposed eleven (11) KPMG-affiliated witnesses.   Joint Decl. ¶¶29-30.   In addition, KPMG deposed seven (7) representatives from the State of New Jersey and its Division of Investment and the State Investment Counsel.  Joint Decl. ¶¶29, 31.

The Parties also engaged in extensive expert discovery prior to reaching the Settlement.[8]   On February 8, 2007, Lead Plaintiff served KPMG with expert

---

[7]   Prior to the first wave of KPMG's document production, the Parties negotiated and executed a protective order to govern the treatment of such documents.

[8]   In order to assist in developing both liability and damages theories in prosecuting this Action, Lead Plaintiff's Counsel retained various experts,

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

reports from its (i) healthcare expert, Paul L. Chiafullo, (ii) accounting and auditing expert, Harris L. Devor, CPA, and (iii) damages and financial markets expert, David N. Fuller, CFA, ASA.  On March 13, 2007, KPMG served Lead Plaintiff with reports from its respective experts (i) Scott K. Phillips of Healthcare Management Partners, LLC, (ii) J. Duross O'Bryan, CPA, and (iii) Alan C. Shapiro.  These opening reports were followed by rebuttals reports by both sides. All six experts sat for depositions in May and June 2007.  Joint Decl. ¶32.

## 2.     Prior Discovery with Tenet Defendants

Not only have Lead Plaintiff's Counsel devoted thousands of hours to their discovery efforts against KPMG, but thousands of additional hours in their discovery efforts with the Tenet Defendants -- discovery which also aided in Lead Plaintiff's prosecution of its claims against KPMG.  Lead Plaintiff served the Tenet Defendants with its first request for documents in September 2004, and the Tenet Defendants began producing documents in January 2005.  The Tenet Defendants produced their first installment of documents on or about January 28, 2005; followed by a second installment in or around June 2005, and a third installment in or around September 2005.   In total, the Tenet Defendants produced over three million (3,000,000) pages of documents for Lead Plaintiff's review.  During this same time, Lead Plaintiff's Counsel also received tens of thousands of pages of documents from third parties.[9]  The complete review of the

_____

including a healthcare expert, accounting and auditing expert, and a damages expert.  Joint Decl. ¶¶22-25.

[9]  Lead Plaintiff's Counsel served subpoenas on third-parties UBS Warburg and Mutual of Omaha, and FOIA requests on the following government entities: the CMS, U.S. Department of Justice, U.S. Department of Health and Human Services, and the Provider Reimbursement Review Board.  Joint Decl. ¶26, fn. 9.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

foregoing documents required an entire year of attorney time.[10]  Joint Decl. ¶¶26-27.

Tenet also served Lead Plaintiff with multiple sets of document requests and interrogatories.  These discovery requests included four separate requests for the production of documents, three sets of interrogatories and a request for admissions.

Thus, the in-depth knowledge developed during the course of this extensive investigation and formal discovery, and in particular, the consultation with Lead Plaintiff's various experts, prepared Lead Plaintiff's Counsel for hard-fought settlement negotiations with KPMG, as detailed below, and led Lead Plaintiff's Counsel to recommend acceptance of the Settlement to Lead Plaintiff and the KPMG Class.

## C.    Settlement Negotiations

The Parties initially began discussing settlement in August 2006 while discovery was ongoing, and participated in a two day formal mediation, on August 2 and 3, 2006, with the assistance of Gary McGowan, an experienced mediator from Houston, Texas.  In advance of the mediation, the Parties prepared detailed mediation statements for Mr. McGowan's review.  By the end of the mediation session, however, the Parties were too far apart in the settlement values that each side placed on the Action and ceased discussions, and the Parties continued to litigate the Action against KPMG.  Joint Decl. ¶34.

---

[10]  Lead Plaintiff's Counsel's healthcare industry expert -- O'Conco, Inc. -- was also involved in this review.  Further, Lead Plaintiff's Counsel obtained technologically advanced software to create a document database to enable the lawyers working on the case to review, analyze, and organize the documents in a cost-effective and non-duplicative manner.  This software was also utilized in the review of documents produced by KPMG and to enhance review by Lead Plaintiff's experts.  Joint Decl. ¶27.

LIM, RUGER & KIM, LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

With trial only several months away, the Parties renewed their negotiations and agreed to participate in a second formal mediation session on January 30 and 31, 2008, with the assistance of the Honorable Daniel J. Weinstein (Ret.).  Prior to the mediation, Lead Plaintiff submitted its previous mediation statement, along with a supplemental letter and the Parties' dispositive motion briefing for Judge Weinstein's review.   After two additional days of negotiations with Judge Weinstein, the Parties, although making progress in bridging their respective positions, did not reach an agreement at the second mediation.  However, a week later, Judge Weinstein issued a "mediator's proposal" to settle this Action for sixty five million dollars ($65,000,000) in cash, a proposal which both sides ultimately accepted.  Following this tentative agreement to settle, the Parties negotiated the full terms of the Settlement and related documents, which took another four months, with the Stipulation being executed on June 10, 2008.  Joint Decl. ¶¶35-36.

## III.   AWARD OF ATTORNEYS' FEES

### A.   The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award

It has long been recognized that a person who maintains a suit that results in the creation of a benefit in which others have a common interest, may obtain fees from that common benefit.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole").  The Court of Appeals for the Ninth Circuit has specifically found that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Sec. Litig.*), 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSSS*").  *See also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create,

LIM, RUGER & KIM, LLP

1   discover, increase or preserve a fund to which others also have a claim is entitled

2   to recover from the fund the costs of his litigation, including attorneys' fees").

3   The common fund doctrine is also designed to prevent the unjust enrichment by

4   "distributing the costs of litigation among those who benefit from the efforts of

5   the litigants and their counsel." *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.

6   2d 268, 271 (9th Cir. 1989)

7       **B.     Standard for Approval of Attorneys' Fees in the Ninth**

8               **Circuit**

9       It is well settled in the Ninth Circuit that district courts have the discretion

10  to apply either the lodestar method or the percentage-of-the-fund method in

11  determining attorneys' fees in a common fund case.  *WPPSSS*, 19 F. 3d at 1295.

12  Despite this discretion, however, "use of the percentage method in common fund

13  cases appears to be dominant."  *In re Omnivision Techonologies, Inc.*, 559 F.

14  Supp. 2d 1036 (N.D. Cal. 2007).  *See also Six (6) Mexican Workers v. Arizona*

15  *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the

16  common fund doctrine is calculated as a percentage of the recovery").[11]  In fact,

17  _____

18  [11]   In addition to this Circuit, nine other Circuits -- the First, Second, Third,

19  Sixth, Seventh, Eighth, Tenth, Eleventh, and District of Columbia -- have

    endorsed the percentage of the fund approach method for awarding counsel fees.

20  *See, e.g., In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.*

21  *Litig.*, 55 F.3d 768, 822 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("a

    district judge can award attorneys' fees as a percentage of the fund recovered")

22  (citations omitted); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516

23  (6th Cir. 1993) (district court has discretion to award a percentage of the common

    fund); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award

24  should not be based on "individual hours," but rather on the percentage that

    counsel "would have received had they handled a similar suit on a contingent fee

25  basis, with a similar outcome, for a paying client"); *Johnston v. Comerica*

26  *Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (authorizing percentage

    method); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should

27  be calculated using the percentage method; "use of the lodestar in common fund

28

LIM, RUGER & KIM, LLP

the Ninth Circuit has established 25% of the fund recovered to be the benchmark for fee awards in common fund cases. *See Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *In re Heritage Bond Litig.*, MDL Case No.: 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *58-*59 (C.D. Cal. June 10, 2005) (noting that courts in the Ninth Circuit often deviate from the this benchmark and have "consistently approved attorney fee awards over the 25 percent benchmark"). *See also* §III(C)(4) below. Nevertheless, in employing the percentage-of-recovery method, although not required to, courts may perform a lodestar cross-check on the reasonableness of the requested fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of percentage method to calculate attorneys' fees and applying lodestar method as cross-check); *West v. Circle K Stores, Inc.*, No. Civ. 5-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *21 (E.D. Cal. Oct. 19, 2006) (applying percentage method with lodestar cross-check). *See* §III(C)(5) below for an analysis of the lodestar method. Lead Plaintiff's Counsel are providing the necessary information for the Court to perform its analysis using either the percentage-of-the-fund method or the lodestar method. Lead Plaintiff's Counsel respectfully submit that the Fee and Expense Request is reasonable under either analysis.

The Ninth Circuit has also articulated five factors as pertinent criteria for evaluating the reasonableness of a fee request: (1) the results achieved; (2) the

_____

cases is 'out of fashion'"); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768,774 (11th Cir. 1991) (mandating use of percentage method); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"). *See also Private Securities Litigation Reform Act* (the "PSLRA"), 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class … .").

LIM, RUGER & KIM, LLP

12

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiffs; and (5) awards made in similar cases. [12]    *Vizcaino*, 290 F.3d at 1048-50. Consideration of each of these factors, as addressed below, supports approval of Lead Plaintiff's Counsel's requested attorneys' fees.

**C.    Analyses Under the Percentage Method, the Lodestar Method and the *Vizcaino* Factors Support Lead Plaintiff's Counsel's Fee Request**

**1.    The Results Achieved**

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  *In re DJ Orthopedics, Inc. Secs. Litig.*, No 01-CV-2238-K (RBB), 2004 U.S. Dist. LEXIS 11457, at *20 (S.D. Cal. June 21, 2004).  Here, the KPMG Class will receive $65,000,000 in cash, plus interest, representing a very substantial recovery from an outside auditing firm.  When measured against the maximum amount of damages that could have been recovered against KPMG taking into account the PSLRA's judgment reduction provisions, the Settlement becomes even more impressive.   The Settlement is of further value to the KPMG Class in that it was reached before trial commenced, avoiding the risks and uncertainties of a trial and the possibility

---

[12] In addition to a review of the enumerated factors and, in some instances, the amount of time spent by the attorneys in prosecuting the action (*see* Joint Declaration at ¶¶58-59), courts in this jurisdiction have also taken into account certain other factors in reviewing a fee request such as the existence of a pre-determined fee arrangement and the reaction of the class, as discussed in §III(D) herein.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

1    that, after a lengthy and expensive trial, the KPMG Class could recover less, or

2    nothing at all, from KPMG.[13]  Joint Decl. ¶44.

3          The Settlement is particularly impressive in light of the fact that Defendant

4    KPMG, throughout the litigation, consistently contended that damages were zero.

5    Indeed, KPMG's financial expert, Dr. Alan Shapiro, testified that not a single

6    dollar of the decline in Tenet's stock price was attributable to any misstatement or

7    misconduct by KPMG.  Clearly, had the jury ultimately accepted Dr. Shapiro's

8    testimony, the KPMG Class would have recovered nothing at trial against

9    KPMG.  Joint Decl. ¶¶42-43.  Moreover, unlike most cases in which shareholders

10   have recovered monies against an outside auditor for securities fraud, there was

11   no restatement of Tenet's financial results in the Action.

12         Additionally, in its Motion to Amend the Class Period filed with the Court

13   on July 27, 2007, KPMG sought to truncate the class period previously certified

14   by the Court on December 23, 2004, asserting that the class period should end on

15   October 28, 2002 -- the date the UBS Warburg's report casting doubt upon the

16   legality and propriety of Tenet's historical outlier revenues was issued -- instead

17   of November 7, 2002 -- the date when Tenet effectively admitted its improper

18   outlier scheme by firing certain of its top executives.  Although the Court denied

19   KPMG's request to truncate the class period, KPMG would likely have advocated

20   this position at trial and on appeal.  Lead Plaintiff's Counsel are aware that if

21   KPMG prevailed on this theory, the KPMG Class' opportunity for recovery

22   would be significantly diminished.  Joint Decl. ¶44.

23

24   _____

25   [13]  The Settlement also results in a complete settlement of all claims asserted in

26   this Action.  KPMG Class Members will benefit from the previous $216.5 million
     Tenet Settlement, which, even without the Settlement with KPMG, was among

27   the largest recoveries secured in a securities class action in this jurisdiction.

28

LIM, RUGER & KIM, LLP

## 2.     The Risk of Litigation

Numerous cases have recognized that risk, including uncertainty as to whether an ultimate recovery would be obtained, is an important factor in determining a fair fee award.  *See, e.g., Vizcaino*, 290 F.3d at 1048; *WPPSSS*, 19 F.3d at 1299-301; *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976); *Lindy*, 540 F.2d at 117.  *See also Smith v. Crystian*, No. 02-1287, 2004 U.S. App. LEXIS 4955, at *6 (5th Cir. 2004) (holding that district court properly approved settlement, when comparing settlement to possible relief available after full litigation, discounted by the risk of losing).  Even though the Court sustained Lead Plaintiff's claims against KPMG at summary judgment, Lead Plaintiff nonetheless faced substantial risks with respect to proving liability, loss causation and damages if the Action were to proceed to trial.

## a.     Establishing Liability

Lead Plaintiff clearly faced risks with respect to proving KPMG's liability. From the outset of the Action, KPMG took the position that Tenet's Outlier revenues were earned in accordance with Medicare rules and regulations, as well as GAAP.  In fact, during discovery, KPMG submitted testimony from two experts -- a health care expert and an accounting expert -- supporting those assertions.  At trial, there was a definite risk that KPMG and its experts could have convinced a jury that Tenet's financial results were not misleading under the law, and thus, KPMG did nothing wrong by blessing them to investors.  Joint Decl. ¶¶40-41.

Moreover, KPMG possessed several arguments to potentially refute a finding of scienter.  For example, if KPMG were able to convince a jury that Tenet's Outlier revenues were proper and legal under Medicare, a jury could not find that KPMG knew or should have known the revenues were unearned. Further, even if the jury determined that Tenet's receipt of Outliers violated

LIM, RUGER & KIM, LLP

Medicare law and GAAP, KPMG would have contended that they were unaware of Tenet's misdeeds.   Specifically, KPMG would have argued that Outlier revenues were less than five percent of Tenet's total Medicare revenues -- and thus, it had no duty to investigate such an immaterial source of revenues during its audits.   As further support, KPMG would have argued that Tenet did not separate Outlier revenues on its consolidated financial statements -- the exact financial statements audited by KPMG.   Moreover, KPMG would have pointed to the fact that even Tenet's CEO and Chairman during the Class Period -- defendant Jeffrey C. Barbakow -- testified that he was unaware of the disproportionate quantity of Outlier revenues Tenet received during the Class Period.   If Tenet's own CEO and Chairman was unaware of the magnitude of Outliers received by Tenet in the aggregate, KPMG would have argued to the jury that there was no way the outside auditor was required to know such information.

Lead Plaintiff would expect KPMG to attempt to build foundations for all of the foregoing defenses, and others, and to assert many of them at trial.  *See Churchill Vill. L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2003) (concluding district court properly weighed risk when it concluded defendant's belief that it had strong case on merits supported finding of risk).  *See also In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing difficulty of establishing scienter, among other issues, at trial).

### b.   Establishing Loss Causation and Damages

Lead Plaintiff likely faced its largest obstacle with respect to proving loss causation and the KPMG Class's full amount of damages.   In its motion for summary judgment and during the Parties' settlement discussions, KPMG consistently asserted that Lead Plaintiff would be unable to demonstrate that KPMG's audit reports had any material effect on Tenet's stock price, or distinguish what portion of the alleged inflation in Tenet's stock price was

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

attributable to statements and omissions made by KPMG rather than Tenet management.  KPMG, like the Tenet Defendants, also maintained throughout the Action that external factors, such as general market conditions, influenced the trading price of Tenet securities at various times during the relevant period.[14] KPMG further asserted in its motion for summary judgment that the decline in the price of Tenet securities on October 28, 2002 was part of a decline in stock prices "across the entire healthcare industry in the wake of the Warburg Report due to the industry's sensitivity to the likelihood of increased regulatory risk, increased regulatory scrutiny and concerns for the sustainability of outlier revenues."  In addition, KPMG asserted that Lead Plaintiff would ultimately be unable to demonstrate a "corrective" disclosure, since the US Warburg report did not refer to or concern KPMG's alleged misrepresentations and was based entirely on available public information.  Joint Decl. ¶42.  These contentions, in combination with the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), would undoubtedly present a significant defense for KPMG at trial.

The presentation of the foregoing and the Parties' differing arguments on loss causation and damages would have required extensive expert testimony at trial.  Although Lead Plaintiff was able to overcome the summary judgment hurdles and believes it would ultimately be able to present expert testimony to meet its burden on loss causation and damage issues, and to rebut any arguments

---

[14]  KPMG points to the following events, unrelated to Outliers, as possible catalysts for Tenet's stock price decline: (i) the raid of Tenet's Redding Medical Center by agents of the Federal Bureau of Investigation, the Office of Inspector General of the Health and Human Services and Internal Revenue Service on October 30, 2002, accusing two doctors at the hospital of performing unnecessary heart surgeries and Tenet's failure to disclose this fact until the following day; (ii) Tenet's receipt of a subpoena by the Federal Trade Commission relating to a potential merger; and (iii) a nurses strike at two of Tenet's hospitals.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

that KPMG would make at trial, one can never predict how a jury will weigh the testimony of competing experts.  In other words, the crucial element of damages would likely be reduced at trial to a "battle of the experts."  *See, e.g., In re PaineWebber Ltd. Pships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) (noting unpredictability of outcome of battle of damage experts).  *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").  Lead Plaintiff and Lead Plaintiff's Counsel have sufficient experience to recognize that in such a battle, there exists the substantial possibility that a trier of fact could be swayed by KPMG's expert, who would seek to minimize or eliminate the amount of Lead Plaintiff's losses by showing that the losses were attributable to factors other than the alleged misstatements and omissions, potentially limiting substantially Lead Plaintiff's ability to prove damages.[15]

### 3.    The Skill Required and the Quality of Representation

As this Court recognized in *Heritage Bond,* the "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *39 (citation omitted).  Given the complexity of the causes of action and the presence of numerous hotly contested issues, no less than highly-skilled counsel could have successfully represented the KPMG Class and obtained such a favorable

---

[15]    In fact, even if Lead Plaintiff was successful in proving its claims against KPMG, the PSLRA provides for proportionate fault in the form of judgment reduction.  15 U.S.C. § 78u-4(f)(7)(B).  In this respect, because KPMG was a non-settling defendant in connection with the Tenet Settlement, KPMG could argue that the overwhelming majority of the fraud was committed by the Tenet Defendants and that any judgment obtained by Lead Plaintiff against KPMG would first have to be reduced by the greater of the amount of the settlement with the Tenet Defendants or the Tenet Defendants' percentage of fault as compared to the fault determined for all Defendants combined.  Joint Decl. ¶44.

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

recovery.  *See Karcich v. Stuart* (*In re Ikon Office Solutions, Inc., Sec. Litig.*), 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").  In fact, in order to effectively plead and prosecute the Action, Lead Plaintiff's Counsel had to become intimately familiar with, among other things, the rules and regulations of the complex Medicare Prospective Payment System ("PPS") including, the complicated outlier reimbursement formula utilized by the CMS, and various other reporting and accounting regulations and provisions.  Joint Decl. ¶53.  Lead Plaintiff's Counsel, SBTK and Lite DePalma, are highly accomplished in prosecuting complex civil actions, particularly securities class actions, have successfully litigated these types of actions in courts throughout the United States, and respectfully submit that their expertise and hard work helped to yield a positive result for the KPMG Class in a difficult case.  Joint Decl. ¶37, 53.  *See* firm biographies for SBTK and Lite DePalma attached as Exhibits 3 and 4 to the Joint Declaration.  Liaison Counsel, LRK, is a similarly skilled complex litigation firm.  *See* Exhibit 5 to the Joint Declaration.

The quality of opposing counsel is also important in evaluating the quality of the services rendered by plaintiffs' counsel.  *See In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").  Lead Plaintiff's Counsel faced formidable opposition from counsel for KPMG, the nationally prominent law firm of Hogan & Hartson, LLP.  Moreover, as the case approached trial, defendant KPMG added trial counsel, another nationally prominent law firm King & Spalding LLP.  Without the experience, skill and determination displayed by Lead Plaintiff's Counsel during the prosecution of this Action and the hard-fought arm's-length negotiations with KPMG, such a favorable recovery for the KPMG Class in this Action would not have been

attained.   The ability of Lead Plaintiff's Counsel to obtain such a favorable recovery for the KPMG Class in the face of such legal opposition further reflects the superior quality of their work.  Joint Decl. ¶54.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Plaintiff's Counsel

It has been a long-recognized rule that an attorney is entitled to a much larger fee when the compensation is contingent rather than being fixed on a time or contractual basis.  *See Vizcaino*, 290 F.3d at 1048-50.  As stated by the Court of Appeals for the Ninth Circuit in *WPPSSS*:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*Id.* at 1299-1300 (internal citations and quotations omitted).  *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

Lead Plaintiff's Counsel undertook all of the risks of this Action on a contingent fee basis -- the risks of surviving dispositive motions, obtaining class certification, proving liability, loss causation and damages, prevailing in the "battle of the experts," and litigating the Action through trial and likely appeals. Lead Plaintiff's Counsel understood from the outset that they were embarking on a complex, expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for the investment of such time and money.  In undertaking this risk, Lead Plaintiff's Counsel were obligated to assure that sufficient attorney resources were dedicated to the prosecution of this Action.  With an average lag

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

time of three to five years for these kinds of cases to conclude, the financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing basis.  Joint Decl. ¶55.

Furthermore, many such contingent cases do not result in compensation for plaintiffs' counsel because cases are dismissed at the pleadings stage, summary judgment, after a trial on the merits, or even on appeal, and after the expenditure of thousands of hours of attorney and staff time.  Moreover, in a Circuit where securities class actions are routinely dismissed, the contingent nature of Lead Plaintiff's Counsel's representation assumes even greater uncertainty and risk. There have been many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law while the case was pending, such as the recent decisions in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) and *Stoneridge Inv. Partners, LLC v. Scientific-Atlantic, Inc.*, 1285 S. Ct. 761 (2008), or decisions of judges or juries following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.[16]  Thus, there existed a demonstrable risk that Lead Plaintiff's Counsel would invest substantial efforts and receive nothing.  Joint Decl. ¶56.

_____

[16]  *See, e.g., Miller v. Thane, Int'l, Inc.*, 372 F. Supp. 2d 1198 (C.D. Cal. 2005) (defense verdict after bench trial); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) (granting defendants' motion for judgment as matter of law after jury verdict for plaintiffs); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won substantial jury verdict and motion for judgment n.o.v. was denied, but on appeal judgment was reversed and case dismissed after 11 years of litigation); *Landy v.*

LIM, RUGER & KIM, LLP

### 5.     Awards in Similar Cases

As previously stated, the Ninth Circuit has established 25% of the fund recovered for the benefit of the class as a benchmark for fee awards in common fund cases. *See Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Paul, Johnson, Alston & Hunt v. Grauly*, 886 F.2d 268, 272 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *25.    Here, Lead Plaintiff's Counsel's 12% Net Fee Request is significantly below the attorneys' fees routinely requested and awarded by courts in this jurisdiction and throughout the country.   *See, e.g., In re Transkaryotic Therapies, Inc. Securities Litig.*, Civil Action No. 03-10165-RWZ, slip op. at 6 (D. Mass. June 3, 2008) (awarding 24% of $50 million settlement fund) (Zobel, J.);[17] *In re Gemstar-TV Guide Int'l Inc. Sec. Litig*, Master File No. 02-CV-2775 MRP (PLAz), slip op. 1 (C.D. Cal. Sept. 13, 2004) (awarding 16% of $57.5 million settlement fund) (Pfaelzer, J.); *In re Sepracor Inc. Sec. Litig.*, C.A. Nos. 02-12235-MEL & 02-12338-MEL, slip op. at 7, 8 (D. Mass. Sept. 6, 2007) (awarding 30% of the $40,110,000 Equity Fund portion of the settlement fund and 27.5% of the $12,390,000 Debt Fund portion of the settlement fund) (Lasker, J.); *In re Patriot American Hospitality Sec. Litig.*, MDL No. C-00-1300 VRW, 2005 U.S. Dist. LEXIS 40993, at *14 (N.D. Cal. Nov. 30, 2005) (awarding 20.6% of $12.65 million settlement fund); *In re Veritas Software Corp. Sec. Litig.*, Master File No. C-03-0283 MMC, 2005 U.S Dist. LEXIS 30880, at *43 (N.D. Cal. Nov. 15, 2005) (awarding roughly 17% of $35

---

*Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after 5 years of litigation; aff'd on appeal).

[17]   Slip opinions referenced in this Memorandum are attached to the Joint Declaration as Exhibit 7.

LIM, RUGER & KIM, LLP

million settlement fund); *Dusek v. Mattel, Inc.*, Nos. CV 99-10864-MRP (CWx), CV 99-10368 MRP, slip op. at 2 (C.D. Cal. Sept. 29, 2003) (awarding 27% of $122 million settlement fund) (Pfaelzer, J.); *In re Methionine Antitrust Litig.*, Master File No. C 99-3491 CRB, MDL No. 00-1311, slip op at 9 (N.D. Cal. Oct. 3, 2002) (awarding 22.6% of $107 million settlement fund); *In re Informix Corp. Sec. Litig.*, No. 97-CV-01289-CRB, slip. op. at 1 (N.D. Cal. Nov. 23, 1999) (awarding 30% of settlement fund of $137 million).[18]   In fact, the 12% Net Fee Request is even less than the 14.771% that this Court awarded previously in connection with the Tenet Settlement.   Thus, the fee requested here is on the lower end of fees awarded in complex class actions by courts in this Circuit and throughout the country.

### 6.   An Analysis of Lead Plaintiff's Counsel's Lodestar Supports the Requested Fee Award

Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with Lead Plaintiff's Counsel's lodestar demonstrates the reasonableness of the requested fee award.  *See Vizcaino*, 290 F.3d at 1048-50.  *See also Fla. Ex rel. Butterworth v. Exxon Corp.* (*In re Petroleum Prods. Antitrust Litig.*), 109 F.3d 602 (9th Cir. 1997) (comparison of the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness); *Heritage Bond*, 2005 WL 1594389, at *16 (same).

Lead Plaintiff's Counsel and Liaison Counsel have devoted approximately 28,501 hours to the prosecution of Lead Plaintiff's claims against KMPG from

_____

[18]   *See also In re Rite Aid Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (recognizing the findings of three studies indicating, inter alia: (i) average fee recovery of 31% in settlements greater than $10 million, and (ii) median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period).

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

April 28, 2006 through September 30, 2008, resulting in a total lodestar of $11,086,628.13.[19]   *See* Exhibits 3 through 5 attached hereto.   Exhibit 2 also provides summary information for hours, lodestar and expenses incurred by Lead Plaintiff's Counsel and Liaison Counsel in prosecuting and resolving this Action.[20]   Thus, when comparing the 12% Net Fee Request which would result in a fee of $7,588,532.14 to Lead Plaintiff's Counsel's submitted lodestar, the requested fee award is clearly reasonable, resulting in the application of a negative multiplier of .68 to Lead Plaintiff's Counsel's lodestar.[21]   Joint Decl. ¶58.   As courts in this jurisdiction often award multipliers in the 2x-3x range, this Court should find that the lodestar cross-check underscores the reasonableness of

---

[19]   In connection with Lead Plaintiff's Counsel's fee application submitted in the Tenet Settlement, Lead Plaintiff's Counsel estimated that out of the 54,000 hours spent litigating the Action from inception through April 27, 2006, approximately twenty five percent (25%) related solely to the case against KPMG representing 13,500 hours for an estimated lodestar of approximately four million six hundred thousand dollars ($4,600,000).   Although the KPMG Class clearly benefitted from time spent by Lead Plaintiff's Counsel from the inception of the case through April 27, 2006, none of this time has been included in Lead Plaintiff's Counsel's Fee and Expense Request.   If all of the time that benefited the KPMG Class was taken into account, the lodestar figure would be significantly higher than the amount submitted ($15,686,628.13 compared to the submitted 11,086,628.13).   Joint Decl. ¶58, fn. 14.

[20]   The lodestar and expense submissions of David Kessler, Allyn Z. Lite, and Christopher Kim on behalf of SBTK, Lite DePalma and LRK, respectively, are attached as Exhibits 3 and 5 to the Joint Declaration.   These exhibits reflect the names of the attorneys and paralegals who worked on the Action, the hourly rates currently chargeable by each such attorney and paralegal, the lodestar value of the time expended by such attorneys and paralegals, the unreimbursed disbursements of the three firms, and the background and experience of these firms.

[21]   Indeed, if the 12% Net Fee Request ($7,588,532.14) was compared to the total amount of lodestar which Lead Plaintiff's Counsel estimates benefitted the KPMG Class ($15,686,628.13), it would result in an even larger negative multiplier of .48.   Joint Decl. ¶58, fn. 14.

LIM, RUGER & KIM, LLP

the fee application.  *See e.g., Vizcaino*, 290 F.3d at 1048-50 (applying 3.65 multiplier); *Patriot Am. Hospitality Inc.*, 2005 U.S. Dist. LEXIS 40993, at *14-*15 (applying multiplier of approximately 2.63).  *See also In re Blech Sec. Litig.*, Master File No. 94 Civ. 7696, 2000 U.S. Dist. LEXIS 6920, at *5 (S.D.N.Y. May 19, 2000) (reasonableness of plaintiffs' request for fees "is reinforced by evidence that the percentage fee would represent a negative multiplier of the lodestar . . .").  As Lead Plaintiff's Counsel litigated this matter to the "eve" of trial with KPMG and invested substantial resources without a guarantee of payment, Lead Plaintiff's Counsel respectfully submit that the attendant lodestar cross-check adds further support that the requested attorneys' fees are fair and reasonable.  Joint Decl. ¶¶58-59.

> ### D.   The Reaction of the KPMG Class Supports the Fee Request

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at *48-*50 ("The presence or absence of objections is also a factor in determining the proper fee award.").  The Notice advised KPMG Class Members that Lead Plaintiff's Counsel would be requesting an award of attorneys' fees of up to 12% of the KPMG Gross Settlement Fund and reimbursement of litigation expenses not to exceed $2,000,000, plus interest on both amounts.  Because Lead Plaintiff's Counsel has agreed to seek a 12% Net Fee Request, the amount of fees is even less than the amount noticed.  In response to the 552,303 copies of the Notice mailed to potential KPMG Class Members, only a single KPMG Class Member has objected to these requests.  This lack of dissent strongly weighs in favor of the requested fees.

The single objection to the 12% Net Fee Request is without merit. Objector Rinis Travel Services, Inc. Profit Sharing Trust ("Objector Rinis") filed an Objection alleging that Lead Plaintiff's Counsel's fee request is "ipso facto

25

excessive and unreasonable" because the Notice in the Action does not contain information concerning a "lodestar cross-check."   Rinis Objection at 2. [22] Objector Rinis, not surprisingly, fails to cite any statutory authority or precedent that a class action notice requires such information.  There is none.  Indeed, in light of the Ninth Circuit's clear preference for examining fee requests under the percentage-of-benefit analysis, Objector Rinis's argument is baseless.  *See In re Omnivision Techonologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007).  *See also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery").  Moreover, as set forth in this Memorandum, Lead Plaintiff's Counsel's lodestar in the Action fully justifies the 12% Net Fee Request.

In further support of Lead Plaintiff's Counsel's Fee and Expense Request, Lead Plaintiff -- the State of New Jersey and its Division of Investment -- a sophisticated institutional investor with extensive experience in negotiating fees with counsel and in evaluating results in securities fraud class action settlements, has evaluated Lead Plaintiff's present request for fees and expenses and finds it to be fair and reasonable.  *See* Jacobson Decl. ¶¶20-22. [23]   In coming to this conclusion, Lead Plaintiff, who was substantially involved in all aspects of the prosecution of the Action and negotiations surrounding both settlements obtained in this Action, considered the substantial effort displayed by Lead Plaintiff's

---

[22]  *See* Docket No. 434 for objection filed by Objector Rinis.

[23]  The Declaration of Carol G. Jacobson in Support of Lead Plaintiff's Motion for Final Approval of the KPMG Settlement, Plan of Allocation, and the Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement to Lead Plaintiff (the "Jacobson Declaration") is attached to the Joint Declaration as Exhibit 6.

LIM, RUGER & KIM, LLP

Counsel and Liaison Counsel throughout the course of this highly complex litigation and the additional benefits obtained for the KPMG Class as a result of the Settlement with KPMG.  Jacobson Decl. ¶22.  Moreover, Lead Plaintiff's Counsel's fee request is merely a continuation of the downward sliding fee scale set forth in the retainer agreement which was previously approved by Lead Plaintiff and this Court in connection with the Tenet Settlement.  The retainer agreement limits a fee request of sixteen percent (16%) of the first one hundred million dollars ($100,000,000) recovered for the class, fourteen percent (14%) of the next hundred million dollars ($100,000,000) recovered and twelve percent (12%) of any amounts recovered in excess of two hundred million dollars ($200,000,000).  *See* Joint Decl. ¶51; Jacobson Decl. ¶¶16-18.  As a result of the prior recovery of $216,500,000 in cash in connection with the Tenet Settlement, the overall recovery is already in excess of $200,000,000 and thus, all of the additional $65,000,000 recovered in connection with the KPMG Settlement would allow for a fee of twelve percent (12%) to be requested.  Jacobson Decl. ¶21.

The positive reaction of the institutional Lead Plaintiff, coupled with the fact that there has been only a single frivolous objection, adds substantial weight to the determination of the fairness of Lead Plaintiff's present fee request.  *See In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").[24]

---

[24]  Congress, in enacting the PSLRA, sought to encourage institutional investors to play an active role in prosecuting cases under the securities laws.  *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (citing H.R. Conf. Rep. No. 104–369, at 32 (1995) (reprinted in 1995 U.S.C.C.A.N. 730,

LIM, RUGER & KIM, LLP

## IV.   LEAD PLAINTIFF'S COUNSEL ARE ENTITLED TO REIMBURSEMENT FOR THEIR REASONABLE LITIGATION EXPENSES

"[R]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Technology Secs. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995). *See Omnivision*, 559 F. Supp. 2d at 1048; *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d, 779, 791 (E.D. Va. 2001) ("There is no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund.").

Here, Lead Plaintiff's Counsel also request reimbursement of expenses in the amount of $1,762,232.15, incurred to date in connection with the prosecution of the Action on behalf of the KPMG Class, plus interest on such amount earned at the same rate earned by the Settlement Amount.  The overwhelming majority of these expenses were incurred in connection with the work performed by Lead Plaintiff's experts ($1,405,502.36) and Lead Plaintiff's portion of the fees paid in connection with the two mediations ($38,117.65).  Additional substantial

731, 1995 WL 709276)).  Congress believed that increasing the role of institutional investors would "ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104–369, at 34.  Further, sophisticated investors with large financial stakes in litigation have a particular interest in ensuring that class counsel seeks reasonable fees upon final resolution of the case.  Because institutions "'have much the same interests as the plaintiff class generally,'" courts can have more confidence that "'settlements negotiated under the supervision of institutional plaintiffs were 'fair and reasonable' than is the case with settlements negotiated by unsupervised plaintiffs' attorneys.'"  H.R. Conf. Rep. No. 104–369, at 35 (quoting Elliott J. Weiss & John S. Beckerman, Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions, 104 Yale L.J. 2053 (1995).

LIM, RUGER & KIM, LLP

28

LIM, RUGER & KIM, LLP

expenses were incurred in connection with Lead Plaintiff's discovery efforts, including copying, managing, searching and organizing the voluminous document production.  The remaining expenses arise from depositions, costs for transcripts, photocopies, on-line legal research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this Action.[25]  All of these expenses were critical to Lead Plaintiff's Counsel's success in achieving the proposed Settlement and were not reimbursed in connection with the Court's May 26, 2006 Order approving the Tenet Settlement.[26]  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Moreover, the declarations of Lead Plaintiff's Counsel submitted herewith demonstrate that the requested expenses were reasonable and appropriately incurred and therefore warrant reimbursement.  *See* Exhibits 3 through 5 attached

---

[25]  During the course of this litigation, Lead Plaintiff's Counsel established and maintained a litigation fund the ("Litigation Fund").  Expenses paid from the Litigation Fund following April 27, 2006 total $1,061,138.63, and include payments for, among other things, Lead Plaintiff's experts, discovery related efforts and the Parties' formal mediations.  *See* Exhibit 8 attached hereto, providing a breakdown of payments made from the Litigation Fund following April 27, 2006.  Lead Plaintiff's Counsel contributed $1,067,956.55 to the Litigation Fund during this time period, $910,000.00 on behalf of SBTK and $151,921.92 on behalf of Lite DePalma.  The forgoing contributions to the Litigation Fund are reflected in the lodestar and expenses submissions of each firm.  *See* Exhibits 3 and 4.  As of September 30, 2008, a balance of $6,817.92 remained in the Litigation Fund, and this remaining balance has been deducted from the amount of expenses requested by Lead Plaintiff's Counsel herein.  *See* Declaration of David Kessler on behalf of SBTK, attached hereto as Exhibit 3. Joint Decl. ¶60, fn 16.

[26]  Indeed, Lead Plaintiff's Counsel have incurred nearly $3,819,039.24 in out-of-pocket expenses since the commencement of this Action.  None of these expenses were included in the $2,056,807.09 previously reimbursed to Lead Plaintiff's Counsel in connection with the Tenet Settlement.  Joint Decl. ¶60, fn 15.

to the Joint Declaration.  *See also Harris*, 24 F.3d at 19 (Counsel "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citations omitted).  No objections were received regarding the request for expense reimbursement.  Joint Decl. ¶60. Accordingly, Lead Plaintiff's Counsel respectfully request reimbursement of these expenses, plus interest.

## V.   REIMBURSEMENT SHOULD BE AWARDED TO LEAD PLAINTIFF

The PSLRA provides for reimbursement to representative plaintiffs in securities fraud class actions.

> The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. **Nothing** in this paragraph **shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.** 15 U.S.C. §78u-4(a)(4) (emphasis added).

Lead Plaintiff's Counsel respectfully request that an award of $52,000 be made from the KPMG Gross Settlement Fund to Lead Plaintiff, the State of New Jersey and its Division of Investment, as reimbursement for activities undertaken on behalf of, or directly relating to its representation of the KPMG Class.  Lead Plaintiff has been fully committed to pursuing its own claims and the claims of the KPMG Class against the Defendants, including KPMG, for nearly five years - - assigning, at various times, eight persons to participate in overseeing the

prosecution of its claims.   Joint Decl. ¶62.[27]   Overall, Lead Plaintiff was instrumental in achieving this excellent result.

During the Action, Lead Plaintiff actively and effectively fulfilled its obligations as the class representative, complying with all reasonable demands placed upon it during the litigation and settlement of this Action, and has provided invaluable assistance to Lead Plaintiff's Counsel throughout the duration of the Action.   In devoting substantial effort to the commencement and oversight of, and participation in this Action on behalf of the KPMG Class, specifically, Lead Plaintiff responded to document requests and interrogatories, produced large quantities of trading records and other supporting documents, reviewed filings, and communicated regularly with Lead Plaintiff's Counsel, including participating in two mediations and extensive additional settlement negotiations.   Further, a total of seven (7) representatives for Lead Plaintiff prepared and sat for lengthy depositions.   Joint Decl. ¶¶61-62.   These are precisely the types of activities Courts have found to support reimbursement to class representatives.   *See In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (granting awards to lead plaintiffs where they reviewed pleadings, communicated with counsel, indicated willingness to appear at trial, kept informed of settlement negotiations, and effectuated policies of federal securities laws).   *See, e.g., Transkaryotic Therapies, Inc. Securities Litig.*, Civil Action No. 03-10165-RWZ, slip op. at 6 (D. Mass. June 3, 2008) (awarding a total of $42,550 to three institutional lead plaintiffs); *Omnivision*, 559 F. Supp. 2d at 1049 (awarding a total of $29,913.80

---

[27]  A declaration, the Jacobson Declaration, has been submitted on behalf of Lead Plaintiff in support of its request for reimbursement of costs and expenses associated with its representation of the KPMG Class.  The Jacobson Declaration describes in more detail the efforts taken by the Lead Plaintiff during the course of this Action.  *See* Jacobson Decl. ¶¶5-10.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

LIM, RUGER & KIM, LLP

1  to several individual investor lead plaintiffs from the settlement fund); *Glass v.*

2  *UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *52

3  (N.D. Cal. Jan. 26, 2007) (awarding $25,000 awards to each of four individual

4  representatives for their assistance in litigation).

5      Moreover, the Notice stated that an application would be made for

6  reimbursement to the Lead Plaintiff for an amount not to exceed $52,000, and no

7  objections have been received regarding this request.  Joint Decl. ¶63.  This time

8  and expense was incurred following April 27, 2006 and was not previously

9  reimbursed in connection with the award to Lead Plaintiff in the Tenet

10  Settlement.  Accordingly, Lead Plaintiff's Counsel believe that the requested

11  compensatory award to Lead Plaintiff is both fair and reasonable and respectfully

12  submit that Lead Plaintiff's participation in the Action fully warrants the Court's

13  approval.

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Lim, Ruger & Kim, LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES

# VI.    CONCLUSION

For reasons set forth herein, Lead Plaintiff's Counsel respectfully request that the Court award: (i) reimbursement of $1,762,232.15 in expenses incurred in successfully prosecuting this Action, plus interest; (ii) a 12% Net Fee award ($7,588,532.14), plus interest, and (iii) reimbursement to Lead Plaintiff, the State of New Jersey and its Division of Investment, in the amount of $52,000 for its reasonable costs and expenses (including lost wages) directly related to its representation of the KPMG Class.

Dated:  October 13, 2008                    **LIM, RUGER & KIM, LLP**

By:  _____/s/  Christopher Kim_____
Christopher Kim, Esq.
Lisa J. Yang, Esq.
1055 West Seventh Street, Suite 2800
Los Angeles, California 90017

*Lead Plaintiff's Liaison Counsel*

David Kessler, Esq.
Gregory Castaldo, Esq.
Andrew L. Zivitz, Esq.
**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087

Allyn Z. Lite, Esq.
Joseph J. DePalma, Esq.
**LITE DEPALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102

*Lead Plaintiff's Counsel*

LIM, RUGER & KIM, LLP

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES