Christopher Kim, Esq. (Bar No. 082080)
Lisa J. Yang, Esq. (Bar No. 208971)
**LIM RUGER & KIM, LLP**
1055 West Seventh Street, Suite 2800
Los Angeles, California 90017
Telephone: (213) 955-9500
email: christopher.kim@lrklawyers.com
         lisa.yang@lrklawyers.com

David Kessler, Esq.
Gregory M. Castaldo, Esq.
Andrew L. Zivitz, Esq.
**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Counsel for Plaintiffs

Allyn Z. Lite, Esq.
Joseph J. DePalma, Esq.
**LITE DEPALMA GREENBERG & RIVAS, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| In re: TENET HEALTHCARE CORP. SECURITIES LITIGATION | No.  CV-02-8462-RSWL (Rzx) |
| | **JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND REIMBURSEMENT TO THE LEAD PLAINTIFF** |
| This Document Relates to **ALL ACTIONS.** | Date: October 21, 2008 Time: 10:00 a.m. Judge: The Hon. Ronald Lew Courtroom: 21 |

LIM, RUGER & KIM, LLP

1
JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

We, GREGORY M. CASTALDO AND ALLYN Z. LITE, respectfully submit this joint declaration (the "Joint Declaration" or "Joint Decl."), pursuant to Federal Rule of Civil Procedure 23(e), in support of:   (i) the Court's final approval of the settlement of this class action with defendant KPMG, LLP ("KPMG") on the terms and conditions reflected in the Stipulation and Agreement of Settlement dated June 10, 2008 (the "Stipulation"), which the Court preliminarily approved by its Order for Preliminary Approval and for Notice and Hearing dated June 13, 2008 (the "Preliminary Approval Order"); (ii) the Court's approval of the Plan of Allocation pursuant to which the Net Settlement Fund established pursuant to the Stipulation will be distributed to the KPMG Class; (iii) Lead Plaintiff's Counsel's application for attorneys' fees and reimbursement of expenses; and (iv) Lead Plaintiff's application for reimbursement of its reasonable costs and expenses (including lost wages) directly related to its representation of the KPMG Class.[1]

### **Introduction**

1.   We, Gregory M. Castaldo and Allyn Z. Lite, are partners of the law firms of Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") and Lite DePalma Greenberg & Rivas, LLC ("Lite DePalma"), respectively.   SBTK and Lite DePalma were appointed by the Court to serve as counsel ("Lead Plaintiff's Counsel") for Lead Plaintiff, the State of New Jersey and its Division of Investment ("Lead Plaintiff"), and the KPMG Class in the above-styled action

---

[1]   Unless otherwise noted, capitalized terms used herein shall have those meanings contained in the Stipulation.  The KPMG Class is defined as all persons and entities who purchased or otherwise acquired Tenet Healthcare Corporation ("Tenet" or the "Company") securities or sold Tenet put options between August 15, 2000 and November 7, 2002 (the "KPMG Class Period"), including all persons and entities that purchased or otherwise acquired Tenet notes pursuant to the Company's Registration Statements dated 9/13/2000, 11/29/2001, and 12/6/2001, and who were damaged thereby.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

(the "Action").  The Court also approved Lead Plaintiff's selection of Lim, Ruger & Kim, LLP ("LRK") as liaison counsel.  We have been personally involved in all aspects of the prosecution and resolution of this Action, including the negotiations resulting in the settlement of the Action with KPMG.  We have also been kept informed of developments in the Action by attorneys and professional staff working with us and under our direction.

2.     Because this Joint Declaration is submitted in support of a settlement, it is therefore privileged and inadmissible in any subsequent proceeding, other than in connection with the Settlement.  In the event that the Settlement is not approved by the Court, this Joint Declaration and the statements contained herein and in any supporting memorandum are without prejudice to Lead Plaintiff's position on the merits.

### Terms of the Settlement and Notice

3.     Lead Plaintiff has achieved a significant settlement with KPMG on behalf of the KPMG Class:  a recovery of $65,000,000 in cash (the "Settlement Amount"), plus interest. Pursuant to the Stipulation, these funds have been escrowed and invested on behalf of the KPMG Class and have earned $231,200.15 in interest as of October 5, 2008.

4.     The proposed Settlement is the culmination of nearly five years of hard-fought litigation and many months of mediation efforts, including two separate formal mediations, spanning the course of four full days presided over by two seasoned mediators.   The Settlement was obtained only after Lead Plaintiff and Lead Plaintiff's Counsel had (1) conducted an extensive independent investigation; (2) engaged in voluminous and contentious merits and expert discovery (including taking and participating in more than 35 depositions and reviewing over three million pages of documents produced by KPMG, certain of

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

the Tenet Defendants[2] and various third parties); and (3) fully briefed, and defeated, KPMG's motion for summary judgment.  When the Settlement was reached, the Parties were only months away from trial.  As explained in detail below, the Settlement represents an excellent recovery for the KPMG Class, and is among the largest settlements ever obtained from a public auditing firm in a securities class action.

5.     The terms of the Settlement with KPMG are set forth in the Stipulation and in the Notice of Proposed Settlement of Tenet Securities Litigation with KPMG LLP, Motion for Attorneys' Fees and Reimbursement of Expenses and Settlement Fairness Hearing (the "Notice"), which was mailed to 552,303 potential KPMG Class Members pursuant to the Court's Preliminary Approval Order.  *See* ¶11 of the Declaration of Jose C. Fraga of The Garden City Group, Inc. ("GCG"), the Claims Administrator in this Action (the "GCG Declaration" or "GCG Decl."), attached hereto as Exhibit 1.  In addition, on July 11, 2008, the Summary Notice of Proposed Settlement of Tenet Securities Litigation With KPMG, LLP (the "Summary Notice") was published in *The Wall Street Journal*.  *See* GCG Decl. ¶16.  GCG also posted information regarding the

---

[2]  Previously, on May 26, 2006, the Court approved a settlement consisting of $216.5 million, plus additional non-monetary, corporate governance relief with the following defendants:  Tenet, Jeffrey C. Barbakow, David L. Dennis, Thomas B. Mackey, Raymond L. Mathiasen, Barry P. Schochet, and Christi R. Sulzbach (collectively, the "Tenet Defendants") (the "Tenet Settlement").  In connection with the Tenet Settlement, Lead Plaintiff's Counsel submitted the Declaration of Richard S. Schiffrin in Support of Lead Plaintiff's Motion for Approval of the Partial Settlement, Plan of Allocation, the Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award to Lead Plaintiff (the "Tenet Declaration") which sets forth significant procedural and factual history of the Action and which (together with exhibits thereto) is hereby incorporated by reference.  *See* Docket No. 289.  As KPMG was not a settling defendant in the Tenet Settlement, Lead Plaintiff continued to prosecute the Action against KPMG.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

Settlement on its website, www.gardencitygroup.com, which provides access to, among other documents, downloadable copies of the Notice and Proof of Claim and Release form ("Proof of Claim").  *See* GCG Decl. ¶15.

6.     The Notice advised potential KPMG Class Members of, *inter alia*: (i) their right to exclude themselves from the KPMG Class; (ii) their right to object to any aspect of the Settlement, including the Plan of Allocation, the request for an award of attorneys' fees and reimbursement of expenses, or the request for reimbursement to Lead Plaintiff; and (iii) the manner for submitting a Proof of Claim form in order to be eligible for a payment from the Settlement Amount.  The Notice also advised recipients that if they had already submitted a valid Proof of Claim in connection with the Tenet Settlement, they were not required to submit an additional Proof of Claim in order to participate in the Settlement Amount.

7.     The KPMG Class' reaction to the Settlement has been overwhelmingly positive.  The deadline for filing objections or requesting exclusion from the KPMG Class passed on September 19, 2008.  As of the date of this Joint Declaration, only one potential KPMG Class Member -- Rinis Travel Services, Inc. Profit Sharing Trust -- has filed an objection[3] to any aspect of the

LIM, RUGER & KIM, LLP

---

[3]  *See* Docket No. 434 for objection filed by Rinis Travel Services, Inc. Profit Sharing Trust.  This objection is addressed in both Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Allocation (the "Settlement Memorandum") submitted herewith, at §IV(B) and the Memorandum of Law in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Reimbursement to Lead Plaintiff (the "Fee Memorandum") submitted herewith, at §III(D).

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

Settlement, and only eleven (11) potential KPMG Class Members have requested exclusion from the KPMG Class.  *See* GCG Decl. ¶17.[4]

8.     Upon approval of the Settlement, the claims against KPMG shall be dismissed with prejudice, subject to the terms of the Stipulation and the Final Judgment and Order.  For the reasons set forth below, we, on behalf of Lead Plaintiff, respectfully submit that the terms of the Settlement and Plan of Allocation are fair, reasonable and adequate in all respects and, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, should be approved by this Court.

## Background Regarding the Action and the Claims Asserted

### A.     General Overview

9.     The Action arises from a series of materially false and misleading statements and omissions by Tenet and certain of the Company's officers and directors (collectively, the "Tenet Defendants"), from January 11, 2000 to November 7, 2002, which misled investors concerning Tenet's business model and financial health.  Currently headquartered in Dallas, Texas, Tenet operates hospitals, as well as rehabilitation hospitals, specialty hospitals, long-term care facilities, psychiatric facilities, and medical office buildings.  During the relevant time period, Tenet was the second largest investor-owned health care services company in the United States.

---

[4]  A total of seventeen (17) requests for exclusion were previously received in connection with the Tenet Settlement, and pursuant to the Court's May 26, 2006 Order (the "Tenet Final Order"), fifteen (15) were granted exclusion.  As set forth in the Notice, these fifteen (15) individuals and/or entities will automatically be excluded from the Settlement with KPMG, and will not be eligible for a distribution from the settlement proceeds obtained in either settlement.  These previously excluded individuals and/or entities, however, may change their election and participate in the KPMG Settlement if, pursuant to the Notice, they affirmatively "opt-in" to the KPMG Settlement by submitting a letter stating their intention to the Court and counsel for both Lead Plaintiff and KPMG.  To date, no "opt-in" letters have been received.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

10.     As set forth in the first Consolidated and Amended Complaint ("CAC") filed in this Action on May 23, 2003 and the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SCAC") filed on January 15, 2004, Lead Plaintiff alleged, among other things, that the Tenet Defendants defrauded Medicare -- a program established to provide healthcare insurance to the elderly and disabled -- out of hundreds of millions of dollars in unearned "outlier" payments ("Outliers"), through manipulation of the statutory formula that governed the computation of such payments by increasing Tenet's charges, while its actual costs remained static.  As a result, Lead Plaintiff alleged that Tenet's receipt of such Outliers served to artificially inflate Tenet's financial results throughout the relevant period.

11.     Tenet's alleged scheme began to unravel on October 28, 2002, when a market analyst from UBS Warburg questioned the propriety of Tenet's Outliers. The market analyst, among other things, highlighted the fact that Tenet's Outliers for the fiscal year 2002 were expected to total 23.5% of the Company's total Medicare reimbursements -- far out-of-line with the national average of 5-6% mandated by the Centers for Medicare and Medicaid Services ("CMS").  For several days, Tenet denied wrongdoing.  However, on November 6, 2002, Tenet issued a press release stating that the federal government intended to audit Outliers to Tenet hospitals, and on November 7, 2002, Tenet admitted that it was terminating the pricing scheme that created its disproportionate and improper receipt of Outliers.  Moreover, Tenet announced the terminations of the Company's Chief Financial Officer and Chief Operating Officer.  That same day, Tenet estimated that its Outliers would "drop from approximately $65 million per month to approximately $8 million per month," a loss of $684 million annually. This revelation crushed the price of Tenet's common stock, and Tenet's market value dropped 70% in just 10 trading days, wiping out approximately $17 billion in market capitalization.

7

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

## B.    KPMG's Role as Tenet's Auditor

12.    KPMG is an international network of member firms of certified accountants, offering audit, tax and advisory services.  KPMG served as Tenet's independent auditor during the relevant time period and was retained to audit Tenet's consolidated financial statements for fiscal years ended May 31, 2000, 2001 and 2002.   To that end, and in accordance with generally accepted accounting standards ("GAAS"), KPMG was charged with the responsibility of opining upon whether Tenet prepared its financial statements in accordance with generally accepted accounting principles ("GAAP").   Specifically, KPMG audited the financial statements contained in the Company's Form 10-Ks for the years 2000 through 2002, certified that these financial statements were prepared in accordance with GAAP, and represented that KPMG complied with GAAS upon issuing the audit opinions.  Lead Plaintiff contends, however, that KPMG's audit opinions were materially false or misleading because the financial statements at issue allegedly recognized hundreds of millions of dollars of unearned Medicare outlier revenues, and KPMG did not comply with GAAS during its audits.[5]

---

[5] Subsequently on March 30, 2006, the Securities and Exchange Commission ("SEC"), in connection with its formal investigation of Tenet, issued two orders (the "SEC Orders") that disclosed, for the first time, that the SEC had investigated KPMG's audits of Tenet's financial statements during the relevant period.  The SEC Orders contained "findings" that KPMG (i) violated various GAAS upon auditing Tenet's financial statements, and (ii) improperly altered its audit working papers after Tenet's outlier scheme was partially revealed on October 28, 2002.  As a result of its findings, the SEC suspended three of KPMG's auditors from practicing before the SEC, including the highest ranking members of the Tenet auditing team, and KPMG terminated and/or reprimanded seven members of the Tenet auditing team including those suspended by the SEC.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

### History of the Action Against Defendant KPMG[6]

13.    On May 16, 2003, Lead Plaintiff and KPMG entered into a tolling agreement extending the statute of limitations for filing a complaint against KPMG until March 28, 2005.

14.    Having reviewed a substantial portion of documents in Tenet's first production, Lead Plaintiff, on March 28, 2005, filed a motion for leave to file the Third Amended Class Action Complaint for Violations of the Federal Securities Laws (the "TCAC" or "Complaint"), seeking to add KPMG as a defendant.  On April 1, 2005, KPMG sought leave to intervene and subsequently opposed Lead Plaintiff's motion to amend.  The Court granted Lead Plaintiff's motion over KPMG's objection, and the TCAC became the operative complaint.

15.    The TCAC alleged the same claims against the Tenet Defendants as previously set forth in the SCAC, while adding allegations relating to KPMG pursuant to Section 10(b) of the Exchange Act and Section 11 of the Securities Act.  Specifically, the TCAC alleged that KPMG falsely certified that (i) Tenet's fiscal years 2000, 2001 and 2002 financial statements were fairly presented in accordance with GAAP, and (ii) KPMG's audits of these financial statements were performed in accordance with GAAS.  With respect to GAAP, the TCAC asserted, *inter alia*, that KPMG's audit opinions certifying Tenet's class period financial results were materially false or misleading because, during the relevant time period, Tenet allegedly recognized hundreds of millions of dollars of unearned outlier revenues in violation of GAAP.  The TCAC further asserted that KPMG failed to conduct its audits of Tenet's fiscal years 2000, 2001 and 2002 financial statements in accordance with GAAS by, *inter alia*, (i) failing to

---

[6]    For a more fulsome description of the procedural history of the Action, particularly with respect to litigation against the Tenet Defendants, the Court is respectfully referred to ¶¶15-32 of the Tenet Declaration.  *See* Docket No. 289.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

properly plan and perform the audits; (ii) failing to exercise due care and professional skepticism; (iii) ignoring warning or "red flags" that reasonably would have alerted KPMG that Tenet's reports revenue growth was driven by price increases that were unrelated to actual hospital costs, resulting in unearned Outliers from Medicare; (iv) failing to adequately assess the risk of material misstatements in Tenet's financial statements due to fraud and consider that assessment in designing audit procedures to be performed; and (v) failing to obtain competent evidential matter to support the clean audit opinions KPMG issued for Tenet for fiscal years 2000, 2001 and 2002, including failing to perform adequate analytical procedures. *See* TCAC at §VIII, ¶¶340-365.

16.     On September 9, 2005, KPMG filed a motion to dismiss the TCAC, asserting, among other things, that Lead Plaintiff failed to allege loss causation and failed to plead a strong inference that KPMG acted with scienter.  Lead Plaintiff opposed KPMG's motion to dismiss on October 22, 2005, and KPMG filed a reply in further support of its motion on November 18, 2005.  On December 5, 2005, the Court denied KPMG's motion to dismiss and sustained the TCAC.

17.     On January 20, 2006, KPMG answered the TCAC, denying any wrongdoing and liability for the claims asserted against it therein.  Thereafter, as described below in ¶¶28-33, Lead Plaintiff and KPMG (the "Parties") commenced formal discovery, engaging in extensive, and contested, merits and expert discovery.[7]

18.     Following the completion of their discovery efforts, the Parties engaged in extensive dispositive motion practice and trial preparation.  On July

---

[7]  On June 7, 2007, the Action was transferred from the Honorable Ronald S.W. Lew to the Honorable Dale S. Fischer.  The Action was transferred back to Judge Lew on October 1, 2007.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

27, 2007, Lead Plaintiff filed a motion for sanctions against KPMG for spoliation of evidence, seeking, *inter alia*, default judgment.  On the same day, KPMG filed several motions -- a motion for summary judgment, three *Daubert* motions to exclude testimony of Lead Plaintiff's experts Harris L. Devor, CPA, Paul L. Chiafullo and David N. Fuller, CFA, ASA, and a motion to truncate the class period.  Lead Plaintiff and KPMG filed oppositions to each other's motions on September 14, 2007, and filed replies to the oppositions on October 12, 2007.  On October 5, 2007, KPMG filed two motions *in limine* to preclude the Court's consideration of certain evidence in connection with the foregoing motions and trial.  Lead Plaintiff opposed KPMG's motions on November 2, 2007, and KPMG filed replies in further support of its motions *in limine* on November 16, 2007.[8]

19.   By Order dated December 5, 2007, the Court (i) denied Lead Plaintiff's motion for sanctions, KPMG's motion for summary judgment, and KPMG's *Daubert* motions to exclude the testimony of Messrs. Devor and Fuller, in their entirety; (ii) granted in part and denied in part KPMG's *Daubert* motion to exclude the testimony of Mr. Chiafullo; (iii) granted KPMG's motion to start the KPMG Class Period on August 15, 2000 (instead of the previously certified beginning date of January 11, 2000); (iv) denied KPMG's motion to end the KPMG Class Period on October 28, 2002 (instead of the previously certified end date of November 7, 2002); and (v) granted both of KPMG's motions *in limine*.

---

[8]  This motion practice involved extensive evidentiary considerations involving the review and consideration of millions of pages of documents and a multitude of deposition transcripts.  Counsel for the Parties spent thousands of hours conducting fact and legal research, drafting the motions, oppositions and reply papers thereto, and preparing for oral argument.

LIM, RUGER & KIM, LLP

20.     The Parties were actively preparing for trial, which was scheduled to commence on May 13, 2008, when the Parties reached their tentative agreement to settle the Action.

### Lead Plaintiff's Investigation and Discovery

21.     Lead Plaintiff's Counsel conducted a thorough and ongoing investigation into the claims asserted in this Action as well as extensive merits and expert discovery prior to reaching an agreement to settle with KPMG.  Even before Lead Plaintiff filed its initial complaint in 2002, Lead Plaintiff's Counsel began the first phase of their investigation, which included, among other things: (i) review and analysis of Tenet's SEC filings and publicly disseminated financial statements; (ii) interviews with multiple witnesses and former Tenet employees having knowledge about the Company's activities during the relevant time period; (iii) consultations with multiple experts and consultants in the fields of Medicare regulation, auditing, forensic accounting and finance, as detailed further below; and (iv) extensive research of the applicable law with respect to Lead Plaintiff's claims and the potential defenses thereto.  This informal, ongoing component of the discovery process provided the foundation for Lead Plaintiff's allegations against all of the Defendants, including KPMG.

### A.     Lead Plaintiff's Counsel's Use of Experts

22.     In order to assist in developing both liability and damages theories in prosecuting this Action, Lead Plaintiff authorized Lead Plaintiff's Counsel to retain various experts, including a healthcare expert, an accounting and auditing expert, and a damages and financial markets expert.

23.     During the prosecution of this Action, Lead Plaintiff's Counsel consulted extensively with their healthcare expert, Paul L. Chiafullo of O'Conoco, Inc., to gain a more thorough understanding of, *inter alia*: (i) the background and law surrounding Medicare Outliers, (ii) the regulations and actions of CMS in establishing and calculating the cost outlier methodology and

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

the inherent vulnerability of this methodology, and (iii) Tenet's alleged exploitation of this methodology.   These consultations greatly assisted Lead Plaintiff's Counsel in developing their claims against the Defendants.

24.   Lead Plaintiff's Counsel also regularly consulted with their accounting and auditing expert Harris L. Devor, a certified public accountant and shareholder of the accounting firm Shechtman Marks Devor P.C. ("SMD").   Lead Plaintiff's Counsel retained SMD to provide conclusions regarding whether Tenet's consolidated financial statements for the fiscal years ending 2000, 2001 and 2002 were stated in accordance with GAAP and whether KPMG performed its audits of these financial statements in accordance with GAAS.   To that end, Mr. Devor and his staff reviewed and analyzed voluminous documents, including KPMG's audit work papers, public filings, litigation pleadings, SEC testimony, deposition testimony and documents produced during the course of discovery.

25.   In addition, in order to gain an understanding of the KPMG Class' potential damages, Lead Plaintiff's Counsel retained a damages and financial markets expert, David N. Fuller, CFA, ASA, to opine on the issues of loss causation, materiality, and the damages incurred by the KPMG Class.   Mr. Fuller's analyses greatly assisted Lead Plaintiff's Counsel during the negotiations of the present Settlement and aided Lead Plaintiff's Counsel in their preparation of the Plan of Allocation set forth in the Notice.

**B.   Overview of Discovery Prior to the Tenet Settlement**

26.   As detailed further in the Tenet Declaration, the Tenet Defendants began producing documents in January 2005.   The Tenet Defendants produced their first installment of documents in response to Lead Plaintiff's requests on or about January 28, 2005; followed by a second installment in or around June 2005, and a third installment in or around September 2005.   In total, the Tenet Defendants produced over three million (3,000,000) pages of documents for Lead

LIM, RUGER & KIM, LLP

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

Plaintiff's review.  During this same time, Lead Plaintiff's Counsel also received tens of thousands of pages of documents from third parties.[9]

27.    The complete review of the foregoing document productions required an entire year of attorney time.  Lead Plaintiff's Counsel's healthcare industry expert -- O'Conco, Inc. -- was also involved in this review.  Further, Lead Plaintiff's Counsel obtained technologically advanced software to create a document database to enable the lawyers working on the case to review, analyze, and organize the documents in a cost-effective and non-duplicative manner.  This software was also utilized in the review of documents that were subsequently produced by KPMG and to enhance review by Lead Plaintiff's experts.

## C.    Discovery with KPMG

28.    Shortly after the Court sustained the TCAC, Lead Plaintiff and KPMG embarked on nineteen (19) months of discovery.  Lead Plaintiff served KPMG with its first request for documents on March 1, 2006 followed by a second request for documents in April 2006, and KPMG responded to these requests on April 4, 2006 and May 9, 2006, respectively.  In response to Lead Plaintiff's discovery requests, KPMG produced, in four waves, hundreds of thousands of pages of documents on April 13, 2006, May 2, 2006, May 9, 2006 and May 15, 2006.[10]  The documents produced by KPMG included all relevant KPMG audit work papers created in connection with KPMG's audits of Tenet's financial statements for fiscal years 2000 through 2002; all documents provided

---

[9]  Lead Plaintiff's Counsel served subpoenas on third-parties UBS Warburg and Mutual of Omaha, and FOIA requests on the following government entities: the CMS, U.S. Department of Justice, U.S. Department of Health and Human Services, and the Provider Reimbursement Review Board.

[10]  Prior to the first wave of KPMG's document production, the Parties negotiated and executed a protective order to govern the treatment of such documents.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

by KPMG to the SEC during the SEC's investigation of Tenet's receipt of Outliers; and transcripts of testimony given by KPMG employees to the SEC.  On July 5, 2006, Lead Plaintiff served KPMG with its first set of interrogatories.

29.     During the same time, KPMG served Lead Plaintiff with two sets of document requests on April 21, 2006 and May 10, 2006.  Lead Plaintiff responded to these requests on May 24, 2006 and June 9, 2006 and produced documents related to its transactions in Tenet securities.  Thereafter, KPMG served Lead Plaintiff with a third set of document requests on October 24, 2006 and interrogatories on November 20, 2006, which Lead Plaintiff responded to on November 30, 2006 and December 29, 2006, respectively.

30.     On January 10, 2007, Lead Plaintiff served its third, and final, set of document requests on KPMG.  Lead Plaintiff also noticed and deposed eleven (11) KPMG-affiliated witnesses.

31.     Moreover, during discovery, KPMG deposed the following seven (7) representatives from the State of New Jersey and its Division of Investment and the State Investment Council:  (1) Steven Kornrumpf, Director of Division of Investment until 2002; (2) William Clark, Deputy Director of the Division of Investment; (3) John E. McCormac, CPA, Treasurer of the State of New Jersey since January 2002; (4) Vincent Pagnotta, Trader on the domestic trading desk at the Division of Investment; (5) Edward Pittman, Division of Investment Analyst for Healthcare Sector; (6) Jim Vandervort, Director of Research for the Division of Investment until 2003; and (7) Orin Kramer, Chairman of the State Investment Council.  Lead Plaintiff's Counsel defended each of these depositions.

32.     The Parties also engaged in extensive expert discovery prior to reaching the Settlement.  On February 8, 2008, Lead Plaintiff served KPMG with expert reports from its (i) healthcare expert, Paul L. Chiafullo, (ii) accounting and auditing expert, Harris L. Devor, CPA, and (iii) damages expert, David N. Fuller, CFA, ASA.  On March 13, 2007, KPMG served Lead Plaintiff with expert reports

Lim, Ruger & Kim, LLP

1  from its respective experts (i) Scott K. Phillips of Healthcare Management

2  Partners, LLC, (ii) J. Duross O'Bryan, CPA, and (iii) Alan C. Shapiro.  These

3  opening reports were followed by rebuttal reports by both sides.  Moreover, all

4  six experts sat for depositions in May and June 2007.

5      33.    In summary, Lead Plaintiff's Counsel have devoted thousands of

6  hours to their discovery efforts against KPMG -- not to mention their previous

7  efforts in connection with the Tenet Defendants, which discovery also aided in

8  Lead Plaintiff's prosecution of its claims against KPMG.   Lead Plaintiff's

9  Counsel's efforts have included, *inter alia*: (i) conducting private investigations

10 into KPMG's involvement in the Tenet audits, including the review of public

11 documents and the interview of witnesses; (ii) serving subpoenas, FOIA requests

12 and other discovery requests on third-parties; (iii) drafting, responding and

13 negotiating multiple sets of written discovery; (iv) reviewing and analyzing well

14 over three million pages of documents produced by the Tenet Defendants,

15 KPMG, third-parties, and governmental entities during the course of discovery;

16 (v) conducting, defending and attending 35 merits depositions; (vi) consulting

17 with multiple experts in the fields of Medicare regulation, auditing, forensic

18 accounting, and finance to assist in developing both liability and damage theories

19 in prosecuting the Action; and (vii) engaging in extensive expert discovery,

20 including reviewing nine expert reports, opposition reports and reply reports

21 submitted by the Parties' six experts, and taking and defending six expert

22 depositions. As a result of the foregoing, Lead Plaintiff's Counsel and Lead

23 Plaintiff have developed an in-depth knowledge of the strengths and weaknesses

24 of the claims asserted in this Action that has permitted them to fully consider and

25 evaluate the fairness of the Settlement with KPMG to the KPMG Class.

26                    **Settlement Negotiations**

27      34.    The Parties initially began discussing settlement in August 2006

28 while discovery was ongoing.  Specifically, the Parties participated in a two-day

formal mediation, on August 2 and 3, 2006 in New York, with the assistance of Gary McGowan, an experienced mediator from Houston, Texas.  In advance of the mediation, the Parties prepared detailed mediation statements for Mr. McGowan's review.  By the end of the mediation session, however, the Parties were too far apart in the settlement values that each side placed on the Action and ceased discussions.  Thereafter, the Parties continued to litigate the Action throughout 2006 and 2007.

35.    With trial set to begin in a few months, the Parties agreed to participate in a second formal mediation session in San Francisco on January 30 and 31, 2008, with the assistance of the Honorable Daniel J. Weinstein (Ret.). Prior to the mediation, Lead Plaintiff submitted its previous mediation statement, along with a supplemental letter and the Parties' dispositive motion briefing for Judge Weinstein's review.  During the mediation, the Parties discussed, among other things, the claims and defenses, expert damages analyses, legal analyses, the evidence expected to be offered at trial, and other important factual and legal issues and matters relating to the merits of the Action.  Although the Parties made progress in bridging their respective positions, the Parties did not reach an agreement at this second mediation.  However, a week later, Judge Weinstein issued a "mediator's proposal" to settle this Action for $65 million in cash, which both sides ultimately accepted.

36.    Even after the tentative agreement in principle was reached, it took several additional months until the full terms of the Settlement and related documents were agreed upon, with the Stipulation being executed on June 10, 2008.  This Court preliminarily approved the Settlement on June 13, 2008.

### The Settlement Is Fair And In the Best Interests of the KPMG Class

37.    Lead Plaintiff's Counsel -- SBTK and Lite DePalma -- are highly accomplished plaintiffs' class action firms.  Liaison Counsel, LRK, is similarly experienced in complex litigation and also supports the Settlement.  In addition,

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

as set forth above, Lead Plaintiff's Counsel have become extremely knowledgeable of all the factual circumstances underlying Lead Plaintiff's claims and the legal arguments that could be made in support and in defense of these claims. Lead Plaintiff's Counsel have vigorously prosecuted this Action against the Defendants for nearly five years, and in light of the risks involved in taking this Action to trial, believe that the Settlement is in the best interests of the KPMG Class. Firm biographies for SBTK and Lite DePalma are attached hereto as Exhibits 3 and 4.

38.    Moreover, as set forth in the Declaration of Carol G. Jacobson in Support of Lead Plaintiff's Motion for Final Approval of the KPMG Settlement, Plan of Allocation, and the Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement to Lead Plaintiff (the "Jacobson Declaration"), attached as Exhibit 6 hereto, SBTK and Lite DePalma were hired by Lead Plaintiff as its counsel for this Action following a lengthy competitive process. Lead Plaintiff itself is a sophisticated government entity which has been heavily involved in the litigation throughout its pendency. As explained in the Jacobson Declaration, various State personnel of relevant and diverse financial and legal backgrounds and experience were involved in each significant decision that was made. *See* Jacobson Decl. ¶¶13-14. Lead Plaintiff fully supports the Settlement and is very pleased that the KPMG Class will be recovering a significant amount in addition to the previously obtained Tenet Settlement.

## **Substantial Risks Existed That Would Have Jeopardized**
## **A Class Recovery At Trial**

39.    In determining that the Settlement is fair and in the best interests of the KPMG Class, Lead Plaintiff and its counsel heavily considered and analyzed potential impediments to success at trial. In light of the substantial risks set forth below, Lead Plaintiff and Lead Plaintiff's Counsel believe that the Settlement is an outstanding result.

18

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

40.    For example, from the outset of the litigation, KPMG consistently took the position that Tenet did not violate any Medicare statute, rule, or regulation by raising its charges to generate greater Outliers.  Thus, according to KPMG, there were no false or misleading statements in Tenet's reported financial results throughout the Class Period because the Company's reported revenues, including its Outliers, were received in accordance with GAAP.

41.    KPMG's position was supported by two of its experts -- a healthcare expert and an accounting expert -- who submitted reports and testified that Tenet's receipt of Outliers during the Class Period was, at all times, in compliance with all Medicare rules and GAAP.  While Lead Plaintiff believed that it possessed strong evidence to the contrary, including expert opinions demonstrating that Tenet had violated both Medicare rules and GAAP, there was clearly a risk at trial that the jury would accept the opinions of KPMG's experts. Had the jury believed KPMG's arguments, there would have been no finding of liability and no recovery for the KPMG Class.

42.    Similarly, from the commencement of the Action, KPMG took the position that its statements did not cause artificial inflation in Tenet's common stock price.  As support for its position, KPMG introduced expert testimony from Dr. Alan Shapiro.  Dr. Shapiro also testified that the drops in Tenet's stock price at the end of the Class Period were not caused by any correction of a misstatement by KPMG.  Thus, according to KPMG and Dr. Shapiro, there was no loss causation attributable to the auditor's statements and the resulting damages caused by KPMG to members of the KPMG Class were zero.

43.    Had the jury adopted some or all of Dr. Shapiro's opinions, Lead Plaintiff's ability to succeed at trial would have been severely compromised. Thus, the $65 million payment from KPMG is an excellent result.

44.    The KPMG Class faced additional risks.  Even if the jury found liability and that the KPMG Class was entitled to damages, there was a chance

LIM, RUGER & KIM, LLP

that the jury would attribute an overwhelming portion of the blame to Tenet and its executives.   Thus, in ultimately apportioning damages among the several defendants, there was significant risk that the jury would assign less than $65 million to the only remaining defendant, KPMG.   Moreover, KPMG would have certainly argued at trial that the KPMG Class Period should end on October 28, 2002 instead of November 7, 2002.   If the jury adopted KPMG's contention, potential damages awarded against KPMG would have been severely diminished.

45.   Thus, if Lead Plaintiff had pursued the Action through trial, there was a risk that the KPMG Class would have recovered substantially less, or perhaps nothing, from KPMG.   Against this backdrop, Lead Plaintiff's Counsel believed that the $65 million provided by the Settlement is a very favorable outcome.

### The Absence of Collusion

46.   It is clear that the Settlement is not the product of collusion.   As set forth above, the Parties engaged in arm's-length settlement negotiations prior to reaching the Settlement, including participation in two separate formal mediations, spanning the course of four full days and with the assistance of two seasoned mediators.   At all times during their negotiations, both sides zealously and professionally advocated their respective positions.   But for the Settlement -- an agreement that Lead Plaintiff's Counsel believe to be in the best interests of the KPMG Class in light of the strengths of Lead Plaintiff's claims and the risks involved in further litigation -- Lead Plaintiff's Counsel were prepared to take this Action to trial.   Thus, there is no doubt that this Settlement was reached at arm's-length and completely devoid of any fraud or collusion.

### The Plan of Allocation is Fair

47.   The proposed Plan of Allocation (the "Plan"), as set forth in the Notice, provides the manner in which the KPMG Gross Settlement Fund, less all taxes, approved costs (including the cost of notice), Court-awarded attorneys'

LIM, RUGER & KIM, LLP

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

fees and expenses and any reimbursement to Lead Plaintiff (the "KPMG Net Settlement Fund"), shall be distributed to Authorized Claimants. [11]   Lead Plaintiff's Counsel prepared the Plan after careful consideration and detailed analysis and with the assistance of Lead Plaintiff's damage expert, David N. Fuller, CFA, ASA.  The Plan is based upon the damage report submitted by Lead Plaintiff's damage expert in connection with its opposition to KPMG's summary judgment motion.

48.   The Plan reflects Lead Plaintiff's contention that because of misrepresentations and omissions concerning Tenet's financial condition and prospects, the prices of Tenet securities were inflated artificially during the KPMG Class Period (August 15, 2000 through and including November 7, 2002). This Plan takes into account Lead Plaintiff's contention of the estimated inflation per security for each day of the KPMG Class Period.  The formulas contained in the Plan utilize the estimated inflation amounts on the date of purchase and on the date of sale, if any, to calculate each KPMG Class Member's recognized claim. A schedule listing the estimated inflation amounts for each day of the relevant time period is annexed to the Notice.

49.   Differences in treatment of KPMG Class Members are made in the Plan of Allocation only with respect to the type of security at issue and the timing of each KPMG Class Member's purchase(s), acquisition(s) and sale(s) of Tenet securities.   Additionally, with respect to calculating an Authorized Claimant's

[11]   "Authorized Claimant" is defined in the Stipulation as any KPMG Class Member who has submitted a valid Proof of Claim in connection with the Tenet Settlement or who submits a valid and timely Proof of Claim to the Claims Administrator in connection with this Settlement.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

1   recognized loss for Tenet common stock, the Plan takes into account the

2   estimated inflation of the stock for each day of the KPMG Class Period.[12]

3      50.   The Plan was fully disclosed in the Notice that was sent to over

4   550,000 potential KPMG Class Members, and as of the filing of this Joint

5   Declaration, not one KPMG Class Member has filed an objection to the Plan

6   itself. *See* GCG Decl. ¶11.[13]  Accordingly, Lead Plaintiff's Counsel believe that

7   this method of allocation is fair, reasonable and adequate and that the Plan should

8   be approved.

9                    **Attorneys' Fees and Expenses**

10     51.   Lead Plaintiff's Counsel respectfully request an award of twelve

11  percent (12%), plus interest earned at the same rate as earned by the KPMG

12  Gross Settlement Fund.  At the request of Lead Plaintiff, Lead Plaintiff's Counsel

13  are seeking a "net fee," meaning that prior to applying the twelve percent (12%)

14  to the KPMG Gross Settlement Fund, any award of expenses is first subtracted

15  from the KPMG Gross Settlement Fund.  As Lead Plaintiff's Counsel are seeking

16  reimbursement of $1,762,232.15 in expenses, the requested twelve percent (12%)

17  fee award would be applied against $63,237,767.85, resulting in a net fee award

18  of $7,588,532.14.   Lead Plaintiff's Counsel's request for attorneys' fees and

19  expenses is based directly upon the retainer agreement that Lead Plaintiff

20

21  _____

22  [12]  Overall, if the total recognized losses for all Authorized Claimants exceeds the
    KPMG Net Settlement Fund, each Authorized Claimant's share of the KPMG

23  Net Settlement Fund will be determined based upon the percentage that his, her

24  or its recognized loss bears to the total recognized losses for all Authorized
    Claimants.

25

26  [13]  As stated previously, KPMG Class Members who already submitted a valid
    Proof of Claim in connection with the Tenet Settlement are not required to submit

27  another Proof of Claim in order to participate in the Settlement with KPMG and
    will automatically be included in the KPMG Settlement.

28

LIM, RUGER & KIM, LLP

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

negotiated with Lead Plaintiff's Counsel prior to the commencement of the Action that limits a fee request to sixteen percent (16%) of the first one hundred million dollars ($100,000,000) recovered for the class, fourteen percent (14%) of the next hundred million dollars ($100,000,000) recovered for the class, and twelve percent (12%) of any amounts recovered for the class in excess of two hundred million dollars ($200,000,000).  *See* Jacobson Decl. ¶¶16-18.  As a result of the prior recovery of $216,500,000 in connection with the Tenet Settlement, the overall recovery is already in excess of $200,000,000 and thus, all of the additional $65,000,000 recovered in connection with the KPMG Settlement would provide for a fee of twelve percent (12%) to be requested.  *Id.* at ¶21.

52.    In further support of Lead Plaintiff's Counsel's fee and expense request, Lead Plaintiff -- the State of New Jersey and its Division of Investment -- an institutional investor with extensive experience in negotiating fees with counsel and in evaluating results in securities fraud class action settlements, has evaluated Lead Plaintiff's present request for fees and expenses and finds this request to be fair and reasonable.  *See* Jacobson Decl. ¶¶20-22.  In coming to this conclusion, Lead Plaintiff, who was substantially involved in all aspects of the prosecution of the Action and negotiations surrounding both settlements obtained in the Action, considered the substantial effort displayed by Lead Plaintiff's Counsel throughout the course of this highly complex litigation and the additional benefit Lead Plaintiff's Counsel obtained for the KPMG Class as a result of the Settlement with KPMG.  *See* Jacobson Decl. ¶22.  While the Court needs to exercise its own discretion in determining an appropriate fee in the Action, the existence of the fee agreement negotiated at the outset of this Action, as well as Lead Plaintiff's satisfaction with the results obtained, clearly supports the requested fee award.

53.    Given the complexity of this case and the presence of numerous contested issues, no less than highly skilled counsel could have successfully

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

represented the KPMG Class and obtained such a favorable recovery.  In fact, Lead Plaintiff's Counsel, in order to effectively plead and prosecute the Action, had to become intimately familiar with, among other things, the rules and regulations of the complex Medicare Prospective Payment System ("PPS") including, the complicated outlier reimbursement formula utilized by the CMS, and various other reporting and accounting regulations and provisions. Moreover, Lead Plaintiff's Counsel, SBTK and Lite DePalma, are extremely accomplished in prosecuting complex civil actions, particularly securities class actions, have successfully litigated these types of actions in courts throughout the United States, and respectfully submit that their expertise and hard work helped to yield a positive result for the KPMG Class in a difficult case.  *See* biographies of SBTK and Lite DePalma attached as Exhibits 3 and 4 hereto.  Liaison Counsel, LRK, is a similarly skilled complex litigation firm.  *See* Exhibit 5 attached hereto.

54.    Likewise, the quality of opposing counsel is also important in evaluating the quality of the services rendered by Lead Plaintiff's Counsel. Throughout the entire Action, Lead Plaintiff's Counsel faced formidable opposition from counsel for KPMG -- the nationally prominent law firm of Hogan & Hartson, LLP.  Moreover, as the case approached trial, defendant KPMG added trial counsel, another nationally prominent law firm -- King & Spalding LLP.  Without the experience, skill and determination displayed by Lead Plaintiff's Counsel during the prosecution of this Action and the hard-fought arm's-length negotiations with KPMG, such a favorable recovery for the KPMG Class in this Action would not have been attained.  The ability of Lead Plaintiff's Counsel to obtain such a favorable recovery for the KPMG Class in the face of such legal opposition further reflects the superior quality of our work.

**The Contingent Nature of the Fee and the Financial Burden Carried**

55.    Lead Plaintiff's Counsel undertook all of the risks of this Action on a contingent fee basis -- the risks of surviving dispositive motions, obtaining class

certification, proving liability, loss causation and damages, prevailing in the "battle of the experts," and litigating the Action through trial and likely appeals. Lead Plaintiff's Counsel understood from the outset that they were embarking on a complex, expensive and lengthy litigation, which would require the investment thousands of hours of attorney time, with no guarantee of ever being compensated for the investment of such time and money.  In undertaking this risk, Lead Plaintiff's Counsel were obligated to assure that sufficient attorney resources were dedicated to the prosecution of this Action.  With an average lag time of three to five years for these kinds of cases to conclude, the financial burden on contingent counsel is far greater than on a firm that is paid on an ongoing basis.

56.    Furthermore, many such contingent cases do not result in compensation for plaintiffs' counsel because cases are dismissed at the pleadings stage, summary judgment, after a trial on the merits, or even on appeal, and after the expenditure of hundreds or thousands of hours of attorney and staff time.  Further, in a Circuit where securities class actions are routinely dismissed, the contingent nature of Lead Plaintiff's Counsel's representation assumes even greater uncertainty and risk.  There have been many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law while the case was pending, such as the recent decisions in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 356 (2005) and *Stoneridge Inv. Partners, LLC v. Scientific-Atlantic, Inc.*, 1285 S. Ct. 761 (2008), or decisions of judges or juries following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.  Thus, there existed a demonstrable risk that Lead Plaintiff's Counsel would invest substantial efforts and receive nothing.

### Amounts Awarded in Similar Cases

57.    The request for attorneys' fees of 12% is a request well below the attorneys' fees routinely requested and awarded by courts in this jurisdiction to

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

plaintiffs' counsel in similarly complex litigation consistent with the Ninth Circuit's benchmark fee award of 25%. In fact, it is even less than the 14.771% that this Court awarded in connection with the Tenet Settlement. *See* Fee Memorandum at §III(C)(5); *see also* unpublished opinions attached hereto as Exhibit 7.

### Lodestar Cross-Check

58.   Although not required in approving a fee in the Ninth Circuit, a comparison of our fee request with our lodestar also supports the reasonableness of the requested fee award. As set forth in Exhibits 3 through 5 hereto, Lead Plaintiff's Counsel and Liaison Counsel have devoted approximately 28,501 hours to the prosecution of Lead Plaintiff's claims against KMPG from April 28, 2006 through September 30, 2008, resulting in a total lodestar of $11,086,628.13. In connection with Lead Plaintiff Counsel's fee application submitted in the Tenet Settlement, we estimated that out of the 54,000 hours spent litigating the Action from inception through April 27, 2006, approximately 25% related solely to the case against KPMG, representing 13,500 hours for a lodestar of $4.6 million. Although the KPMG Class clearly benefitted from time spent by Lead Plaintiff's Counsel from the inception of the case through April 27, 2006, none of this time has been included in this application and in reality, the lodestar is significantly higher than the amount submitted. Exhibit 2 hereto provides a summary of the hours, lodestar and expenses incurred by Lead Plaintiff's Counsel and Liaison Counsel in prosecuting the Action against KPMG. Accordingly, Lead Plaintiff's Counsel's request for attorneys' fees requires the application of a negative multiplier of .68 to Lead Plaintiff's Counsel's lodestar.[14]

---

[14]   In fact, when taking into consideration the time Lead Plaintiff's Counsel spent litigating the Action from inception through April 27, 2006, which was solely related to efforts against KPMG (as stated above, approximately 25% of the total

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

59.    As Lead Plaintiff's Counsel litigated this matter to the "eve" of trial with KPMG and invested substantial resources without a guarantee of payment, Lead Plaintiff's Counsel respectfully submit that the attendant lodestar cross-check adds further support that the requested attorneys' fees are fair and reasonable.

**Lead Plaintiff's Counsel's Request for Reimbursement of Expenses**

60.    Lead Plaintiff's Counsel also request reimbursement of $1,762,232.15 in out-of-pocket expenses, plus interest earned at the same rate earned on the Settlement Amount.  These expenses were incurred in connection with the prosecution of the Action on behalf of the KPMG Class and were not reimbursed in connection with the Court's May 26, 2006 Order approving the Tenet Settlement.[15]  The overwhelming majority of these expenses were incurred in connection with the work performed by Lead Plaintiff's experts ($1,405,502.36) and Lead Plaintiff's portion of the fees paid in connection with the two mediations ($38,117.65).  Additional substantial expenses were incurred in connection with Lead Plaintiff's discovery efforts, including copying, managing, searching and organizing the voluminous document production.  The remaining expenses arise from depositions, costs for transcripts, photocopies, on-line legal research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals,

---

time, representing 13,500 hours and a lodestar of $4.6 million), the resulting lodestar would be approximately $15,686,628.13.  If the fee amount requested herein is awarded, it would result in a negative multiplier of .48 on the total lodestar.

[15]  Indeed, Lead Plaintiff's Counsel have incurred $3,819,039.24 in out-of pocket expenses since the commencement of this Action.  Lead Plaintiff's Counsel was previously reimbursed for $2,056,807.09 of these expenses in connection with the Tenet Settlement.

LIM, RUGER & KIM, LLP

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

LIM, RUGER & KIM, LLP

1   travel and other incidental expenses directly related to the prosecution of this

2   Action.[16]   *See* Exhibits 3 through 5 attached hereto.  All of these expenses were

3   critical to Lead Plaintiff's Counsel's success in achieving the proposed

4   Settlement.

5   **Reimbursement Award to Lead Plaintiff**

6       61.    The Lead Plaintiff in this Action, the State of New Jersey and its

7   Division of Investment, has been fully committed to pursuing its own claims and

8   the claims of the KPMG Class against the Defendants since the commencement

9   of this Action.[17]   The Lead Plaintiff has actively and effectively fulfilled its

10  obligations as the class representative, complying with all reasonable demands

11  placed upon it during the litigation and settlement of this Action, and has

12  provided invaluable assistance to Lead Plaintiff's Counsel throughout the

13  duration of the Action.  In devoting substantial effort to the commencement of,

14  oversight of, and participation in this Action on behalf of the KPMG Class, Lead

---

16  During the course of this litigation, Lead Plaintiff's Counsel established and maintained a litigation fund the ("Litigation Fund").  Expenses paid from the Litigation Fund during the Action total $1,061,138.63, and include payments for, among other things, Lead Plaintiff's experts, discovery and the Parties' two mediations.  *See* Exhibit 8 attached hereto, providing a breakdown of payments made from the Litigation Fund.  Lead Plaintiff's Counsel contributed $1,067,956.55 to the Litigation Fund, $910,000.00 on behalf of SBTK and $151,921.92 on behalf of Lite DePalma.  The forgoing contributions to the Litigation Fund are reflected in the Lodestar and Expenses submissions of each firm.  *See* Exhibits 3 and 4.  As of September 30, 2008, a balance of $6,817.92 remained in the Litigation Fund, and this remaining balance has been deducted from the amount of expenses requested by Lead Plaintiff's Counsel herein.  *See* Declaration of David Kessler on behalf of SBTK, attached hereto as Exhibit 3.

17  The Jacobson Declaration has been submitted on behalf of Lead Plaintiff in support of its request for reimbursement of costs and expenses associated with its representation of the KPMG Class.  The Jacobson Declaration, attached as Exhibit 6 hereto, describes in more detail the efforts of the Lead Plaintiff.

JOINT DECLARATION OF GREGORY M. CASTALDO AND ALLYN Z. LITE

Plaintiff responded to document requests and interrogatories, produced large quantities of trading records and other supporting documents, reviewed filings, and communicated regularly with Lead Plaintiff's Counsel, including through two mediations and extensive additional settlement negotiations.  Further, a total of seven representatives for Lead Plaintiff prepared and sat for lengthy depositions.  Jacobson Decl. ¶¶5-10.  These are precisely the types of activities Courts have found to support reimbursement to class representatives.  *See* Fee Memorandum §V.

62.    Further, the New Jersey Attorney General's Office and its Division of Investment lent significant time to the litigation -- assigning eight persons at various times to participate in overseeing the litigation.  Jacobson Decl. ¶¶13-14.  In addition, as stated above, a representative of Lead Plaintiff participated in both mediation sessions with KPMG, and consulted with us on an ongoing basis.  *Id.* ¶¶7-9.  Overall, Lead Plaintiff was instrumental in achieving this excellent result.

63.    Lead Plaintiff's Counsel respectfully request that an award of fifty two thousand dollars ($52,000.00) be made to Lead Plaintiff, as reimbursement for its reasonable costs and expenses (including lost wages) directly relating to its representation of the KPMG Class during the prosecution and resolution of this Action against KPMG.  The Notice stated that an application would be made for reimbursement to the Lead Plaintiff for an amount not to exceed $52,000, and no objections were received regarding this request.  Accordingly, Lead Plaintiff's Counsel believe that the requested compensatory award to Lead Plaintiff is both fair and reasonable and warrants the Court's approval.

We hereby declare that the foregoing is true and correct.

Dated:  October 23, 2008                    _____/s/ Gregory M. Castaldo___
                                            GREGORY M. CASTALDO


                                            _____/s/ Allyn Z. Lite_____
                                            ALLYN Z. LITE

LIM, RUGER & KIM, LLP